*Decision will be entered under Rule 50.*

JANE U. ELLIOTT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91587.   Filed May 15, 1963

*Bernard J. Killion, Jr.,* for the petitioner.
*J. Frost Walker,* for the respondent.

PIERCE, *Judge:*   Respondent determined deficiencies and additions to tax against the petitioner, as follows:

| Year | Deficiency | Addition to tax (sec. 6651(a)) |
| --- | --- | --- |
| 1955 | $1, 218. 96 | $201. 29 |
| 1956 | 2, 778. 22 | 277. 82 |
| 1957 | 3, 688. 54 | None |

The principal issue for decision is, what amount, if any, is petitioner entitled to claim as a deduction for a theft loss on her return for each of the years involved? The other issues in the case are as follows:

(1) What amount is petitioner entitled to claim as a deduction for depreciation in respect of certain rental property for each of the years?

(2) What amount is petitioner entitled to deduct as repair expense in respect of said rental property, for the years 1956 and 1957? By amendment to her petition, petitioner claims that if the amounts of repair expense disallowed by respondent are not deductible as such, then the said amounts should be deductible as casualty losses, on the ground that such claimed repairs were occasioned by damages caused by "severe storms."

(3) What amount is petitioner entitled to deduct as ordinary and necessary expenses of a business of a real estate agent in which petitioner claimed to be engaged during 1956 and 1957?

(4) Is petitioner entitled to deduct a greater amount for 1955 than the $450 allowed by respondent as a deduction for legal fees in said year?

(5) Was petitioner's late filing of returns for 1955 and 1956 due to reasonable cause and not due to willful neglect, so as to render her not liable for the addition to tax imposed by respondent under section 6651(a) for said years?

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts, together with the exhibits therein identified, is incorporated herein by reference.

Petitioner, Jane U. Elliott, resides in Cohasset, Mass. For each of the taxable calendar years involved, 1955, 1956, and 1957, she filed a Federal income tax return with the district director of internal revenue at Boston.

During most of the year 1955, petitioner lived in an apartment in New York City. The door to petitioner's apartment was equipped with two locks, one a so-called slide bolt lock, and the other a conventional-type lock in the handle of the door. The slide bolt lock was so designed and fitted that it was difficult if not impossible to remove the hinges of the door and thereby gain access to the apartment. There were two persons other than petitioner who had sets of keys to her apartment—these being her maid and the building manager.

Petitioner had over the years pursued a hobby of collecting jewelry, and in May of 1955 she had amassed a sizable number of pieces. Some of her jewelry she had purchased; but most of it had come to her by way of gifts or inheritance from her mother, her grand-

mother, her former husband, and other relatives and friends. Most of it she kept in a hand-tooled leather box, which was about the size of an attaché case but somewhat thicker and which contained three drawers. At all times petitioner kept the box on a dresser in the bedroom of her apartment. The box was locked, and the key thereto was kept in a dresser drawer, hidden from view under clothing. Petitioner carried with her on her person, only the particular pieces of jewelry that she was wearing at the time. She did not keep any list or inventory of her jewelry.

On a day in May 1955 not shown by the record, petitioner returned to her apartment from an out-of-town trip. When she entered the bedroom, she immediately noticed that the jewelry box was gone from the dresser, and that several other articles that had been on the dresser top had been knocked to the floor—as if someone had "swooped" the box off the dresser. Other than the disarray at the dresser, the bedroom and the rest of the apartment were in good order and undisturbed. Petitioner examined the locks to the door of the apartment; and these did not appear to have been tampered with.

Petitioner thereupon called the New York City Police Department; and in response to her call, a detective was sent to interview her and get details with regard to the missing jewelry. Petitioner furnished the detective with a "partial list" of the jewelry that was missing—being such items as she could recall at the time.

The police questioned both the building manager and petitioner's maid in the course of their investigation; but neither of these individuals was arrested nor charged with theft of petitioner's jewelry. The record in the instant case does not contain a copy of a formal report of the police investigation.

At the time that petitioner discovered that her jewelry had been taken, she had a so-called floater policy with the Hartford Indemnity Co., under which she was insured against loss with respect to certain articles of jewelry and wearing apparel, arising from any cause other than ordinary wear and tear and from acts occurring during periods of war, insurrection, and the like. Among the articles in petitioner's jewelry box at the time it was taken, were two rings valued at $1,250 that were covered by the floater policy. Petitioner filed a claim with the insurance company for payment of a theft loss with respect to said two rings; and the insurance company assigned an adjuster to investigate the claimed theft. Following said investigation, the insurance company paid petitioner, as a theft loss, $1,250 for the two rings covered by the above-mentioned floater policy.[1]

---

[1] The loss with respect to the two rings, for which petitioner was compensated by insurance, was not claimed by petitioner on any of her returns; and it is not directly involved in the instant case.

Petitioner, on the Federal income tax return which she filed for the year 1955, claimed a deduction for a theft loss in the amount of $3,165. To support the claimed loss deduction, she attached to the return a schedule, on which were listed 16 articles of jewelry, with claimed values ranging from $50 to $1,000 per piece. All of these articles had been either given to, or inherited by, petitioner. The amount appearing opposite each item on the schedule, represented petitioner's estimate of the value thereof, arrived at after consulting with various friends and persons in the jewelry business— none of whom is identified in the record.

As hereinabove found as a fact, petitioner had no list or inventory of the jewelry which she had owned at the time it was taken from her apartment. During each of the years 1956 and 1957, she recalled other articles that had been taken, in addition to those which she had included on the schedule attached to her 1955 return. On the return which she filed for 1956, she claimed a theft loss deduction arising out of the 1955 events hereinabove described, in the amount of $4,500; and on her 1957 return, she claimed still another theft loss deduction, based on said 1955 events, in the amount of $6,331.45. Each of these last-mentioned deductions was likewise supported by a schedule similar in form to that attached to her 1955 return, hereinabove described. The articles included in each schedule were different from those in the other schedules; and there is no duplication of articles in the three schedules. The values assigned to the articles of jewelry in the schedules attached to the 1956 and 1957 returns were fixed by petitioner in the same manner as that described for 1955. The 1956 and 1957 schedules differ in one respect from the 1955 schedule: There are included on the 1956 schedule, 3 items purchased by petitioner (having an aggregate value attributed thereto of $550), and on the 1957 schedule there are included among the 39 items thereon, 9 pieces of jewelry purchased by petitioner (having an aggregate value attributed thereto of $539.95).

Respondent, upon auditing petitioner's returns for 1955, 1956, and 1957, disallowed the above-mentioned theft loss deductions claimed by petitioner on her returns for those years.

In about 1948 petitioner and her former husband purchased a parcel of improved real property in Cohasset, known as 181–A Atlantic Avenue, at an aggregate price for land and buildings of $24,000. The Atlantic Avenue property had been part of a large estate; and the portion thereof which petitioner and her husband purchased contained a carriage house, a guesthouse, a greenhouse, and a toolhouse. The carriage house apparently had been converted into a dwelling house. Petitioner and her husband occupied the Atlantic Avenue property as their residence until 1954, in which year they were divorced. Peti-

tioner received the Atlantic Avenue property outright in the property settlement incident to the divorce.

Later in 1954 and throughout the taxable years involved, petitioner leased out the Atlantic Avenue property to tenants, at an annual rental of $2,075 in 1955, $3,335 in 1956, and $2,947.34 in 1957. On her returns for each of said years she claimed a deduction for depreciation with respect to the Atlantic Avenue property of $1,200, based on a 20-year useful life. On her 1956 and 1957 returns she also claimed deductions for repairs to said property in the respective amounts of $2,268.86 and $5,395.58.

On the audit of the returns, respondent determined that the allowable depreciation with respect to the Atlantic Avenue property was $600 per year, which he computed by allocating $20,000 of the total $24,000 purchase price to the buildings, and attributing a useful life thereto of 33⅓ years. He also disallowed $450 of the deduction claimed for repair expense on the 1956 return, on the ground that petitioner had not substantiated the disallowed portion; and he disallowed $3,652.02 of the 1957 deduction for repair expense, on the ground that said sum represented capital expenditures.

On her returns for 1956 and 1957, petitioner claimed the following amounts, as deductions for expenses of an asserted business of a real estate agent:

|  | 1956 | 1957 |
|---|---|---|
| 25 percent of the expenses of operating petitioner's automobile | $438. 09 | $330. 30 |
| Sales promotion and conventions | 358. 49 | None |
| Business use of telephone | 15. 50 | 15. 90 |
| Total expenses claimed | 812. 08 | 346. 20 |

Petitioner did not earn any income in either year from a trade or business of a real estate agent.

Upon audit of petitioner's returns for 1956 and 1957, respondent disallowed the amounts so claimed, on the ground of petitioner's "failure to establish business relationship in the years 1956 and 1957, respectively."[2]

Petitioner, as has hereinabove been found as a fact, was divorced from her husband in 1954. Under the terms of a separation agreement incident to the divorce decree, petitioner's former husband was obligated to pay alimony to her. Petitioner had difficulty collecting the alimony due from her former husband; and she retained the services of attorneys and an accountant to see that the husband made the alimony payments due her.

---

[2] In the notice of deficiency, the respondent made a mathematical error in describing the amount claimed by petitioner for 1956, as $513.08 rather than $812.08, as shown on the 1956 return; and this mathematical error is reflected in the amount of the deficiency determined.

Petitioner reported as income on her returns for the taxable years involved, the following amounts of alimony received from her husband:

| | |
|---|---|
| 1955 | $10,050.00 |
| 1956 | 19,993.35 |
| 1957 | 18,200.00 |

On the returns for said years, petitioner claimed deductions for the following amounts paid as fees to the attorneys and the accountant for their services in connection with collecting alimony:

| | Attorneys' fees | Accountant's fees |
|---|---|---|
| 1955 | $1,050.00 | $125 |
| 1956 | 725.00 | 150 |
| 1957 | 1,853.75 | 150 |

The respondent, upon audit of petitioner's returns allowed all of the accountant's fees for each year; and he allowed the attorneys' fees in their entirety for each of the years 1956 and 1957. However, for the year 1955, he disallowed $600 of the attorneys' fees for said year, without explanation.

The return filed by petitioner for each of the years involved was prepared for her by an accountant. As regards the return for 1955, petitioner received an extension of time within which to file the return for that year from April 15, 1956, to July 15, 1956. Petitioner's return for 1955 was not filed until September 12, 1956. As regards her return for 1956, the record contains no evidence of an extension of time within which to file said return. The 1956 return, which was due to be filed on April 15, 1957, was not filed until May 22, 1957. Respondent, in his statutory notice of deficiency, determined that petitioner was liable for an addition to tax under section 6651(a) of the 1954 Code for each of the years 1955 and 1956, on the ground that the returns for those years were not filed within the period provided by law.

### OPINION

The first and principal issue in the instant case presents the question: What amount, if any, is petitioner entitled to claim as a theft loss deduction in respect of the jewelry taken from her apartment in May 1955? Petitioner has claimed a deduction in respect of the same theft, for each of the years 1955, 1956, and 1957; and respondent has disallowed in its entirety the deduction claimed in each year.

Statutory warrant for deduction of losses due to thefts is found in the following provisions of section 165 of the 1954 Code:

SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. \* \* \*

\* \* \* \* \* \* \*

(e) THEFT LOSSES.—For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.

Lying at the threshold of this theft loss deduction issue is a legal question of the proper year for deducting any theft loss found to be allowable in the instant case. Petitioner's counsel has not filed any brief; but from his opening statement at the trial, we gather that he contends that petitioner correctly took theft loss deductions in the piecemeal fashion that she did, i.e., over the 3 years here involved, on the ground that she "discovered" the alleged losses as she happened to recall the missing pieces—notwithstanding that there was only one theft, which occurred in 1955. He relies, of course, on the provisions, just quoted, of section 165(e). In our opinion, this section does not permit the deduction practice followed by petitioner in the instant case.

Section 165(e) was a new provision in the 1954 Code. The purpose of its adoption is shown in the following statement by the House Ways and Means Committee:

In embezzlement and other theft losses \* \* \* the taxpayer may not find out about the loss until the statute of limitations has run for the year in which the loss was incurred.

The committee has adopted a provision which provides that theft losses can be deducted in the year in which the taxpayer discovers the loss, *and only in that year*.

\* \* \* \* \* \* \*

Subsection (e) [of section 165] is a new provision for the treatment of theft losses. There was no comparable statutory provision in the 1939 Code. Regulations 118, section 39.43-2 provides that a loss from theft or embezzlement is ordinarily deductible for the year in which sustained. There has been considerable uncertainty and litigation about the application of this rule. Under the new provision, the loss will always be deductible in the year in which the taxpayer discovers the loss. \* \* \* [H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 21, A46; emphasis supplied.]

To the same effect, see S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 23, 198.

In the instant case, petitioner did not encounter the difficulty mentioned by the committee, of being unable to pinpoint the year when the loss occurred. She discovered the loss in May 1955, and she knew that all of her loss had occurred in that year. Petitioner's problem was one of memory, that is, of recalling what had been taken. In these circumstances, it seems to us that whatever loss there was, must be

deducted in the year of the discovery of the theft (1955, here) ; and that if in subsequent years petitioner remembered other articles that were taken, she should have filed amended returns for 1955, rather than claiming additional losses in the year or years when she recalled the further articles that were taken. We hold that, to the extent that petitioner sustained a deductible theft loss, the same is deductible in 1955, the year of discovery of the theft.

We come then to the factual question of whether a theft occurred, and, if so, the tax-deductible loss attributable to what was stolen. On the first question, the standard for weighing the evidence was stated by this Court in *Mary Frances Allen*, 16 T.C. 163, and subsequently approved in *Warner L. Jones*, 24 T.C. 525, as follows:

Petitioner has the burden of proof. This includes presentation of proof which, absent positive proof, reasonably leads us to conclude that the article was stolen. If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. If the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden.

We think that the reasonable inferences from the evidence point to a theft, rather than to a "mysterious disappearance," as contended by respondent. The jewelry was in a locked jewelry box of about the size of an attaché case. The box was kept on a dresser in petitioner's apartment; and the apartment was in turn secured by two locks. The disarray of the dresser top and the fact that articles had been knocked therefrom to the floor, lead to the inference that the jewelry box was hurriedly snatched by a thief. Also, petitioner filed a claim with an insurance company for a theft loss in respect of two rings that were in the jewelry box and that were insured against loss from theft, as well as other causes; and the insurance company, after investigation, paid petitioner for the rings as a theft loss. We are satisfied that a thief, identity unknown, stole petitioner's jewelry from her apartment in May 1955. Accordingly, we hold that she sustained a theft loss in that month and year.

Factual questions remain as to what was taken and as to the amount of the loss that is deductible with respect thereto. After seeing and hearing the petitioner testify, we are satisfied that those articles which she listed on the schedules attached to her 1955, 1956, and 1957 returns were in fact taken in the 1955 theft.

Our findings of fact reveal that most of the articles of jewelry stolen from petitioner were acquired by her through gift or inheritance; and that none of the articles in the 1955 schedule were purchased by her, only three of the articles on the 1956 schedule were purchased by her, and only nine of the articles in the 1957 schedule were acquired by her through purchase. However, the evidence wholly fails to distinguish between the articles acquired by gift and

those acquired by inheritance. And also, the evidence fails to identify either the cost to the donor or decedent of any article, or the fair market value of any article at the time petitioner acquired the same by gift or inheritance.

Section 165(b) provides:

(b) AMOUNT OF DEDUCTION.—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the *adjusted basis* provided in section 1011 for determining the loss from the sale or other disposition of property. [Emphasis supplied.]

And then, section 1011 provides in substance and so far as here material, that the adjusted basis for determining gain or loss shall be the *basis* determined under other applicable sections of subchapter O, after certain prescribed adjustments not here material.

Section 1014 deals with the *basis of property acquired from a decedent;* and in very general terms, it provides that the basis of such property shall be the fair market value at the date of decedent's death. As already stated, we cannot tell from the evidence herein, which of the stolen articles petitioner inherited; nor is there any reliable evidence as to the fair market value of the articles listed in the schedules attached to her returns (which would of course include the inherited articles), at the dates of death of the decedents from whom petitioner inherited them. As to the inherited articles, then, we must hold that petitioner has failed to establish the facts necessary to determine the amount of deductible loss.

Section 1016 deals with the *basis of property acquired by gift;* and, in very general terms, it provides that the basis of such property acquired after December 31, 1920,[3] shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be the fair market value. It will be seen that we need to know the appropriate basis figure as well as the fair market value at the date of gift of each article of the stolen jewelry which petitioner acquired by gift. But petitioner has not even identified the gift articles, nor has she adduced any evidence as to their basis, or any reliable evidence as to their fair market value at the time she acquired them. Here again, we must hold that petitioner has failed to establish the facts necessary to determine the amount of the deductible loss, with respect to those articles which she acquired by way of gift.

There are left for our consideration the 12 articles, listed on the 1956 and 1957 schedules, which petitioner acquired by purchase and as to which the loss, if allowable at all, would be allowable in 1955.

---

[3] From certain testimony at the trial herein, we deduce that petitioner was born in 1921, and thus would have received the gifts of jewelry involved after December 31, 1920.

The pertinent Income Tax Regs. (secs. 1.165–7 and 1.165–8) provide, in substance, that the measure of deductible loss by theft of such property is the fair market value thereof at the time of the theft, but not in excess of the cost of such property. Applying such measure in the instant case, the evidence establishes that the fair market value of said 12 articles of property at the time of the theft was $1,089.95, and we are satisfied that this is less than petitioner's cost of said property. Accordingly the amount of petitioner's deductible loss as to these articles of property is said amount of $1,089.95. We hold that she is entitled to a deductible theft loss of said amount in 1955; and that she is not entitled to any deductible theft loss for the same in either 1956 or 1957.

We turn from the theft loss issue to the other five issues mentioned in our preliminary statement.

(1) *Depreciation on rental property.*—Respondent decreased the amount of depreciation claimed as a deduction for each year, by allocating a portion of the total purchase price of the Atlantic Avenue property to the buildings and the remainder to the land. He also increased the useful life of the buildings from 20 years (claimed by petitioner) to 33⅓ years. The adjustments are presumptively correct; and petitioner has introduced no evidence tending to establish the impropriety of either the allocation or the longer useful life. We therefore sustain the respondent as to this issue.

(2) *Repair expenses on rental property.*—Respondent disallowed a portion of the repair expenses claimed with respect to the Atlantic Avenue property for each of the years 1956 and 1957. The amount disallowed for 1956 was $450, out of a total claimed deduction of $2,268.86; and the disallowance was based upon a failure to substantiate the deduction. The 1957 disallowance was $3,652.02, out of a total of $5,395.58; and said disallowance was predicated upon the respondent's determination that the disallowed amount was expended for capital improvements.

Petitioner introduced no evidence as to the precise object, or the payees, of the amount disallowed for 1956; and she introduced no evidence tending to show that the 1957 amounts disallowed were for currently deductible expense rather than capital improvements. We must here again hold that she has failed to overturn the presumptively correct determinations of the respondent.

At the trial, petitioner amended her petition, with respect to the disallowed repairs, to include the following:

such repairs took place as a result of a casualty occasioned by severe storms which occurred during such taxable years, i.e., 1956 and 1957. Hence, such amounts, if not allowable as repairs, are allowable as casualty losses.

The only evidence relating to the asserted casualty is the following testimony:

The COURT. There was one other little thing I would like to clarify. I think, Mr. Killion, near the start of the case, there was a correction [contention] made that these repairs [were] losses at least for some years—maybe for all years, I am not sure—were really storm losses.

Mr. KILLION [petitioner's counsel]. Yes, I believe that——

The COURT. And I haven't heard anything about that. What year did the storm occur or what year did that pertain to?

The WITNESS. There were only certain of those, sir, that were storm losses.

Mr. KILLION. Well, to the best of your recollection, Mrs. Elliott, wasn't there a hurricane? Wasn't it one of those years that hit the Cape area, the south shore of Massachusetts?

The WITNESS. That is right.

Mr. KILLION. That would be something we could get upstairs here if we had to, the year.

The COURT. Some of these items were a result of the storm, but you can't identify?

Mr. KILLION. I don't myself know whether it was '55 or '56, but I seem to recall it was '56. I am not sure.

The WITNESS. I believe the rest of the items were incurred by my tenants.

The foregoing testimony, which neither pinpoints the year of the alleged storm nor the "repairs" that were made to mend the damages claimed to have been caused thereby, is much too indefinite to enable us to find or hold that petitioner's disallowed repairs are deductible as casualty losses.

(3) *Business expenses as a real estate agent.*—Petitioner has not introduced sufficient evidence of her activities in a claimed business of being a real estate agent, to enable us to find that she was actually in such a business in either of the years 1956 or 1957, for which respondent disallowed claimed expenses of engaging in such a business. Indeed, some of petitioner's testimony indicates that she temporarily abandoned such claimed business activity in 1957. We sustain the respondent's action in disallowing the claimed deductions, for failure of petitioner to establish error therein.

(4) *Legal expenses of collecting alimony.*—Respondent partially disallowed the deduction for attorneys' fees paid by petitioner in 1955. We are satisfied that such fees were paid for the production or collection of income (alimony from petitioner's former husband). Section 212(1) of the 1954 Code accordingly authorizes a deduction thereof.

We note that respondent allowed all of the attorneys' fees deducted by petitioner in 1956 and 1957, as well as all of the accountant's fees for each of the 3 years involved. We can see no basis for treating the 1955 portion of the attorneys' fees which he disallowed, any differently from the attorneys' fees and accountant's fees which he allowed. All were expended for the same purpose.

We accordingly sustain the petitioner as to this issue.

(5) *Additions to tax for late filing of returns for 1955 and 1956.*—
Petitioner's return for each of the years 1955 and 1956 was filed after

the time provided by law for the filing of said returns. Respondent imposed an addition to tax for each such year under section 6651(a) of the 1954 Code, for the late filing; and his action must be sustained unless the petitioner establishes that the tardy filing of the returns was due to reasonable cause and not due to willful neglect.

Petitioner apparently seeks to establish reasonable cause in the fact that she relied upon her accountant to prepare the returns on time, and to seek extensions of time for filing them if he found that he was unable to have them ready at the times they were due to be filed. The accountant was not called as a witness; and we do not know the reason why he failed to prepare the returns in sufficient time for petitioner to file them when due. In any event, petitioner cannot, upon a bare showing of reliance upon the accountant, establish the requisite reasonable cause and thereby shield herself from liability for the additions to tax here sought to be imposed. See *Rene R. Bouche*, 18 T.C. 144, 148–149. We sustain the respondent on this issue.

*Decision will be entered under Rule 50.*