JOHN AND ESTHER C. ALCALA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alcala v. Commissioner
Docket No. 379-83.
United States Tax Court
T.C. Memo 1984-664; 1984 Tax Ct. Memo LEXIS 9; 49 T.C.M. (CCH) 363; T.C.M. (RIA) 84664; December 26, 1984. John Alcala, for the petitioners. Gary A. Benford, for the respondent. KORNER MEMORANDUM FINDINGS OF FACT AND OPINION "KORNER, Judge: For the calendar years 1979 and 1980, respondent determined deficiencies in income tax against petitioners in the respective amounts of $6,245 and $6,523. All such amounts were placed in issue by the petition herein. Although some eleven issues were raised by the pleadings, as the result of negotiations and concessions by the parties prior to and at trial, the issues remaining for determination are: a. The amount of petitioners' allowable charitable deductions for 1979 and 1980; b. Whether petitioners are entitled to a theft loss deduction for 1980, and the amount thereof; c. Whether petitioners are entitled to business expense deductions for 1980 in connection with an alleged "Amway" activity, and the amount thereof; d. Whether petitioners are entitled to business deductions for 1979 and 1980 in connection with an alleged welding business, and the amount thereof; and e. Whether petitioners, under the provisions of section 6653(a), [1] are liable for additions to tax in *11 each year. [2]
At the time the petition herein was filed, petitioners were residents of Farmington, New Mexico. Petitioners, husband and wife, filed joint Federal income tax returns for the calendar years 1979 and 1980. For each year, petitioner John Alcala (hereinafter sometimes "John") was employed by the Public Service Company of New Mexico, and petitioner Esther C. Alcala (hereinafter sometimes "Esther") was employed by the Mountain States Telephone and Telegraph Company. For convenience, our findings and opinion on each issue will be grouped together. 1. Charitable Deductions - 1979 and 1980.
The returns filed by petitioners claimed $4,695 and $6,290, respectively, for various charitable contributions in the years 1979 and 1980. Respondent disallowed the entire amounts in his statutory notice of deficiency, but now concedes that allowable contributions by petitioners *12 were made in the respective years in the amounts of $2,272.85 and $2,025.90. Petitioners contend that they contributed additional amounts in each year to their church, both in cash and in property, but presented no evidence to substantiate the same, either as to the amount of cash nor as the value of the property. Petitioners have the burden of proof on this issue, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners' allowable deductions for the years 1979 and 1980 must accordingly be limited to the above amounts which respondent has conceded. 2. Theft Loss Deduction - 1980.
In their 1980 return, petitioners claimed a casualty loss of $500 which, after reduction by the mandatory $100 deductible, section 165(h), produced a net claimed casualty loss of $400, which respondent disallowed in full. At trial, John attempted to support this claimed deduction by testifying that this casualty loss resulted from the theft of a tool box containing various types of tools, which he said was stolen from the back of his pickup truck while it was "parked in town." John was unable to state exactly when the theft occurred, except that it was sometime *13 in the summer of 1980. He stated that he did not report the theft for insurance purposes, because he was informed by his insurance company that his insurance did not cover the loss. No police report or other corroboration of the fact of the loss was put in evidence, and, although petitioners claimed a value of $500 for the tools, petitioners were unable to establish the original cost of the tools or their value at the time they were allegedly stolen. [3]
In order to be entitled to a theft loss under section 165, a taxpayer must prove that a theft actually occurred and the amount of the loss, with the latter amount being the taxpayer's adjusted cost basis of the property. Section 165(b), (c). Petitioners had the burden of proof to establish these elements, Elliot v. Commissioner,40 T.C. 304 (1963). Aside from John's very brief and very vague testimony on this *14 subject, there is no evidence in the record to prove either the fact of the loss, that such loss was due to theft, the value of the articles allegedly stolen, or petitioners' cost basis therein. We must accordingly sustain respondent's determination because of petitioners' failure of proof. 3. The Amway Activity - 1980.
For the year 1980, petitioners filed a Schedule C with their tax return for an alleged Amway Products distributorship, in which they reported no gross income but claimed expenses in the total amount of $7,385 for various items including, inter alia, depreciation on an auto, car expenses, travel and entertainment, car insurance and the like. Respondent disallowed these expenses in their entirety, on the grounds that neither the amount nor the deductibility of the items had been established. Section 162 provides, in pertinent part: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. In order to achieve deductibility of claimed business expenses, therefore, a taxpayer must satisfy a two-pronged test: (a) the expense *15 must be incurred in the conduct of a trade or business, and (b) must be ordinary and necessary in nature, for the type of business involved. The burden of proof in these matters is on the taxpayer. Welch v. Helvering,supra; Rule 142(a). As described by John in his testimony at trial, petitioners undertook to become Amway distributors by first buying a "kit" (contents undisclosed) for $75. It was then their task to maintain samples of Amway merchandise and to display these items to friends and other prospective customers whom they could induce to come in and make purchases, and whom they could further induce to go out and recruit other prospective customers to come in and purchase Amway products. By becoming Amway distributors, John testified that petitioners would not only be able to purchase Amway products themselves, but would receive credits on the purchase price through the purchases were made by their friends and others whom they had recruited. Although both petitioners had full-time employment during the years in question, John testified that petitioners pursued this activity several days each week, for one or two hours a night, from time *16 to time inviting people into their home, giving promotion talks, and serving drinks and cookies to their prospective customers. Before becoming involved in the alleged Amway distributorship in 1979, John testified that he had had no prior experience in retail sales, had no particular knowledge about running a small business, and had never recruited salesmen. The only investigation or research which he did into the potential profitability of the Amway distributorship was in "talking to different other people." The principal asset which he claimed he used in the business was a 1978 Cadillac, which he said he bought in that year at a price of $16,000, and for which he claimed depreciation of $4,000 in the year 1980, as well as expenses in connection with said car of $2,000. He stated that principal use of this vehicle was to bring the prospective clients to his promotion meetings and to attend out-of-town "Amway rallies." In the years 1979 and 1980, he testified that he purchased goods from Amway for purposes of resale in the amount of between $500 and $600 per year. In spite of these alleged efforts, John testified that he only recruited two people to be Amway distributors *17 in 1979 and perhaps one in 1980. He admitted that he made no sales in 1979 (and no Schedule C reporting this claimed business activity was filed by petitioners for that year) and made sales of less than $5 in 1980. John gave the following significant testimony: Q. How many sales did you make in 1980? A. Sales - 1980 - Probably not even $5 worth, because we did not get any new people coming in, you see. We just mostly went in for ourselves and then get the other people coming in with us. Q. So it is your testimony that your total income from Amway in 1979 and 1980 was less than $5? A. Yes. Q. Are you still in the Amway business? A. Yes. We like the products and you can't get them any other way. On this record, there arises the strong suspicion that petitioners became Amway distributors primarily for the purpose of providing themselves with Amway merchandise which they could not otherwise obtain, while, at the same time, providing themselves with considerable tax deductions. Compare Barcus v. Commissioner,T.C. Memo. 1973-138, affd. 492 F.2d 1237 (2d Cir. 1974). We make no such finding herein, but we do hold that petitioners *18 have failed to carry their necessary burden of proof to establish that they entered into a bona fide business enterprise with the intention and objective of making a profit. McCormick v. Commissioner,T.C. Memo. 1969-261. Having so held, the claimed deductions in connection with this activity must fail, and need not be examined in detail. Respondent is sustained on this issue. 4.The Welding Activity Expenses - 1979 and 1980.
For both years here in issue, petitioners filed Schedule C with their income tax returns for an alleged welding business conducted by John, in which they reported no gross income, but claimed for each year deductions in the respective amounts of $9,515 and $7,230 including, inter alia, depreciation on a truck and auto expenses in the respective amounts of $2,500 and $2,000, travel and entertainment of $1,500, insurance, interest, utilities, supplies and the like. Respondent disallowed these expenses in their entirety, on the grounds that neither the amount nor the deductibility of the items had been established. The only evidence given in support of these deductions at trial was John's testimony. No books and records *19 of this alleged welding business activity were produced. John admitted at trial that the amounts claimed for these deductions were not precise, but were "rounded" for convenience. John, who was employed full time in the years in question as a mechanic by the Public Service Company of New Mexico, testified that he started this "business" in 1979 by buying a welding machine, installing it on a used Chevrolet pickup truck which he already owned, and purchasing miscellaneous welding materials. Although he admitted he was not a trained welder, he testified that he prepared and passed out small "flyers" advertising his services in performing minor and miscellaneous welding tasks, such as welding metal stairways and trailer hitches. No specimen of his advertising was introduced into evidence. Although John admitted that he received less than $100 for these services in 1979, which he did not report, and received no income from this activity in 1980, he stated that he did enjoy the welding business, particularly the trips to various shows and exhibits that he made in connection therewith. He devoted "a couple of hours" a week in each year to this enterprise, in the evenings after his *20 regular work. The situation here parallels closely the situation previously discussed herein with respect to the alleged Amway enterprise, and no extensive discussion is required. Whether deductions of the type claimed here are allowable as business deductions depends in the first instance upon a finding that the taxpayer is truly engaged in carrying on a trade or business with the objective of profit. Sections 162, 183. The Code contains no clear-cut definition by which one can measure the existence or nonexistence of a profit motive, but certain guidelines or tests are provided by respondent's regulations which are frequently helpful in resolving the problem. Although no one or all of said tests are determinative, they are useful testing points in making the necessary factual determination of a profit motive. Section 1.183-2(b), Income Tax Regs., provide nine indicia or tests which can be considered in determining whether the necessary profit motive exists: 1. The manner in which the taxpayer carries on the alleged business activity; 2. The expertise of the taxpayer or his advisors; 3. The time and effort expended by the taxpayer in carrying on the activity; *21 4. The expectation that assets used in the activity may appreciate in value; 5. The success of the taxpayer in carrying on other similar or dissimilar activities; 6. The taxpayer's history of income or losses with respect to the activity; 7. The amount of occasional profits, if any, which are earned; 8. The financial status of the taxpayer; and 9. Any elements of personal pleasure or recreation which are involved with the activity. Tested by the above standards, and reviewing the scanty record herein as a whole, it is clear that petitioners have failed to carry their necessary burden of proof that John entered into his welding activity with the serious intent of carrying on a trade or business for profit. The absence of any reported income from the enterprise, compared to the extensive deductions which were claimed, including travel and entertainment, suggests strongly that the generation of tax deductions which could be offset against petitioners' income from their regular employment was more important than the prospects of generating any profit from welding. See Davis v. Commissioner,T.C. Memo. 1982-82. We hold, therefore, that *22 petitioners have failed to prove that the alleged welding activity carried on by John in 1979 and 1980 was the conduct of a trade or business carried on with reasonable objective of profit. McCormick v. Commissioner,supra. This eliminates the necessity for our considering the various items of deduction which were claimed by petitioners in their returns with respect to this alleged activity, with the exception of one item. For 1979, a deduction for interest in the amount of $250 was claimed. Although such interest would be deductible, if established, without regard to whether John was carrying on a trade or business, Section 163, petitioners presented no proof at all establishing that any such amount was paid, or what it was paid for. As with the other claimed deductions, therefore, this too must be disallowed, and respondent's determination with respect to this issue must be approved. 5. Additions to Tax Under Section 6653(a)-1979 and 1980.
By amendment to his answer herein at the time of trial, which was allowed by the Court, respondent amended his answer to assert additions to tax under section 6653(a) for both years, alleging that petitioners *23 were negligent or in deliberate disregard of respondent's rules and regulations in connection with the preparation and filing of their returns. Although petitioners would have had the burden of proof on this issue if it had been contained in respondent's statutory notice of deficiency, Enoch v. Commissioner,57 T.C. 781 (1972); Rule 142(a), where such additional issue is raised by respondent in his answer or amended answer, the shoe is on the other foot, and the burden of proof with respect to the issue is upon respondent. Rule 142(a). Upon consideration of the record as a whole, we are satisfied that respondent has met his necessary burden of proof on this issue. The failure to present any relevant books and records at trial with respect to petitioners' two alleged business enterprises suggests either that such books and records did not exist, or, if they did, would not support petitioners' claimed deductions. [4] The rounding of figures for the alleged business expenses; the lack of any identification in the returns as to what the items were for, in some cases; and the failure of petitioners to keep adequate records forces the conclusion that petitioners *24 were negligent, to say the least, in complying with their record-keeping and return-filing duties. We accordingly hold that imposition of additions to tax under section 6653(a) for each year herein is warranted. Due to concessions and partial concessions by the parties herein with respect to other issues, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Rules of Practice and Procedure of the Tax Court, except as otherwise noted. ↩
2. This issue was raised by respondent by amendment to his answer.↩
3. John's only testimony on this subject was that he had bought the tools "at least a couple of years before [1980]" for "about $400 or $500 somewhere in there," and at the time of the alleged theft, "they are not going to be worth the original. That is the best of what I figure is around $400."↩
4. At trial, petitioners introduced into evidence various canceled checks which they claimed supported some of the alleged business deductions. Such canceled checks principally showed payments to insurance companies, gasoline stations, food stores and the like, contained nothing on their faces would identify them with any business activity, and could just as easily have been for personal expenditures as for any allowable business expense. John's testimony with respect thereto was singularly unconvincing.↩