QUINBY TAYLOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 15059-86.
United States Tax Court
T.C. Memo 1988-389; 1988 Tax Ct. Memo LEXIS 419; 55 T.C.M. (CCH) 1642; T.C.M. (RIA) 88389; August 22, 1988. *419 Held, various items of income, deductions and additions to tax determined. Quinby Taylor, pro se. Mary P. Hamilton, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent determined the following deficiencies in income taxes and additions to tax against petitioner for the years 1980, 1981 and 1982: Additions to Tax:
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6661 [2]
1980
$  62,443.58
$ 3,122.18
$    -- 1981
101,846.55
5,092.33
-- 1982
103,566.91
5,178.35
10,356.69
Respondent also determined that petitioner is liable for additions to tax under section 6653(a)(2) for the taxable years 1981 and 1982. Such additions equal to 50 percent of the statutory interest on the underpayment are to be computed at the time any deficiencies are assessed (or, if earlier, the date they are *420 paid). The issues for decision are: 1) Whether petitioner failed to report dividend, interest and capital gain income for 1980, 1981 and 1982; 2) Whether petitioner is entitled to certain deductions in 1980 and 1981 for a casualty loss, interest expense and other miscellaneous items; 3) Whether petitioner is liable for additions to tax under section 6653(a) for 1980, 1981 and 1982 and under section 6661 for 1982. FINDINGS OF FACT Pursuant to Rule 91(f), this Court entered an order deeming the matters set forth in respondent's proposed stipulation of facts as maintained for purposes of this case. Respondent's counsel, prior to trial, on May 29, 1987, sent petitioner the proposed stipulation of facts along with attached exhibits and a copy of Rule 91. By letter of June 2, 1987, petitioner requested an example of a stipulation of facts and other information and documents. Counsel for respondent in a June 9, 1987, letter advised petitioner that an example of a stipulation of facts had been enclosed in the previous May 29, 1987, letter. From then until the case was called for trial, no response or meaningful communication was made by petitioner with respondent's counsel in regard *421 to the case. Upon inquiry from the Court, petitioner acknowledged receiving the Notice Setting Case for Trial sent by the Clerk of the Court on January 22, 1987. This notice specifically advises that the parties are required to "agree in writing to all facts and all documents about which there should be no disagreement." The notice further advises that failure to cooperate may result in the dismissal of the case. Enclosed with the notice of trial was a directive concerning pretrial procedures, which specifically directed petitioner's attention to Rule 91. Petitioner's reason for failing to comply with Rule 91 was that he feared he would be stipulating away the case. This is not an adequate reason for failing to comply with the Court's directive regarding stipulation under Rule 91. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time he filed his petition, petitioner resided in West Newton, Massachusetts. Petitioner at the time of trial was 68 years old and had experienced some health problems. He owns two homes, one in West Newton, Massachusetts, and the other on Cape Cod in North Falmouth, Massachusetts. Petitioner *422 attended Andover Academy and Milton Academy. He attended Harvard College as an undergraduate and then Harvard Law School. Upon graduation from law school, petitioner worked as an associate for two law firms. He is also licensed as a stockbroker and has worked for two brokerage firms. Petitioner additionally is licensed to sell mutual funds. For the past 30 years, petitioner has not worked for anyone but has devoted himself to managing his own investment portfolio. During this period he has lived on his dividend and interest income. Petitioner over the years and specifically in 1980, 1981 and 1982 owned many stocks. While it was not his practice to frequently sell shares which he owned, petitioner would do so on occasion. For instance, he would sometimes sell some shares to give his friend, a broker at Kidder Peabody, some business. He would also evaluate his portfolio prior to year-end and would sell the stocks with whose performance he was dissatisfied. Petitioner has used many different stockbrokers and brokerage houses to effectuate his purchases and sales of stocks. The companies which paid dividends on shares held by petitioner would send him Forms 1099, stating the amount *423 of dividend income which the particular company had paid to him during the year. Petitioner deposited the dividend checks he received into savings accounts, checking accounts or certificates of deposit with numerous financial institutions. Petitioner has had many different bank accounts. He would often open an account with a particular financial institution to take advantage of free promotional gifts or services. The financial institutions with which petitioner maintained accounts would send him Forms 1099, stating the interest which the particular institution had paid to him for the year. Petitioner on his 1980 individual income tax return reported $ 16,168.50 of interest income and $ 39,289.70 of dividend income. Petitioner on the return took a $ 4,200 deduction for a casualty loss, a $ 1,211.12 deduction for interest expense and $ 3,000 of miscellaneous deductions. Petitioner on his 1981 individual income tax return reported $ 3,097 of interest income and $ 53,965 of dividend income. Petitioner on the return took $ 3,000 of miscellaneous deductions. Petitioner on his 1982 individual income tax return reported $ 5,301.93 of interest income and $ 63,757.31 of dividend income. *424 He, on the return, also claimed various itemized deductions which are not in issue. Petitioner on his 1980, 1981 and 1982 returns did not submit a Schedule B listing the individual items of interest and dividend income he received from various payors. Each return did have a Schedule A specifying the various itemized deductions claimed. Petitioner on his 1980, 1981 and 1982 returns reported no capital gains. The 1980, 1981 and 1982 returns were prepared by petitioner himself. He did not receive the assistance of an accountant or a return preparer. In compliance with sections 6041, 6042 and 6049, various payers of interest, dividends and capital gains to petitioner in 1980, 1981 and 1982 filed information returns with the Internal Revenue Service on the payments made. Some payers, such as large corporations make their information returns by furnishing magnetic computer tapes containing the information on the income paid. See section 1.9101-1, Income Tax Regs. The Internal Revenue Service then compiled this information into documents called either Underreporter Transcripts or Information Returns Selection System Transcripts. An underreporter transcript is a computer-generated *425 compilation of the information furnished by persons required to file information returns. The data from information returns is accumulated by type (i.e., interest, dividends, wages, withholding tax, etc.) and by taxpayer, and compared to data on the individual's income tax return for the same period. The underreporter transcript consists of two parts. The first part summarizes and compares the information reported on the tax return with the data on the information returns. The second part lists in detail the data from the information returns, including the payee, his address and social security number, the payer and the payer's employer identification number, and the type of income and amount. The information returns selection system transcript is similar to the underreporter transcript, except it does not contain a comparison with the information reported on the individual's income tax return. Subsequent to the filing of petitioner's 1980, 1981 and 1982 returns, transcripts concerning his unreported interest, dividend and capital gains income were generated at the Internal Revenue Service Center in Andover, Massachusetts. The underreporter transcripts on petitioner for 1980 *426 and 1981 each list 400 items of income. For those years, the computer program which generated the transcripts stopped at 400 items. The transcripts indicate that the listing of income items is incomplete. The transcript generated for 1982 contains 525 items of income paid to petitioner. Petitioner has not challenged the accuracy of respondent's underreporter transcript, over and beyond a generalized complaint about how much tax he owes. As a result of the underreporter transcripts mentioned above, an examination of petitioner's 1980, 1981 and 1982 income tax returns was triggered, since the information reported on the returns did not match the information furnished to the Internal Revenue Service by payers. Respondent in his notice of deficiency determined petitioner had unreported interest income, dividend income and capital gains in the following amounts: Unreported
Unreported
Unreported Net
Interest
Dividend
Long-term Capital
Year
Income
Income
Gains
1980
$ 17,927.86
$  65,249.10
$  8,067,24
1981
32,908.48
103,614.66
15,861.00
1982
7,847.54
178,149.77
21,137.51
Schedules were included in respondent's notice setting forth the payer and the amount of the various items of interest, dividends and capital *427 gains upon which the determination of unreported income was based. The 1980, 1981 and 1982 adjustments for unreported income included items of unreported income in addition to those contained in the computer-generated transcripts. On these additional income items, information on either the payee or on the stock, number of shares sold and date of sale were given. Respondent in the notice of deficiency further disallowed as unsubstantiated the 1980 deductions taken for a $ 4,200 casualty loss, $ 1,211.12 of interest expense and the $ 3,000 of miscellaneous items, and the 1981 deduction taken for $ 3,000 of miscellaneous items. Petitioner was also determined to be liable for additions to tax under sections 6653(a) and 6661. The notice of deficiency stated that petitioner was liable for the additions to tax under section 6653(a) because his underpayments of tax were due to negligence or intentional disregard of rules and regulations. Upon the completion of his case, the Court suggested to petitioner that he obtain competent professional assistance in preparing his tax returns in the future. OPINION Respondent determined that petitioner had unreported interest, dividend and capital *428 gains income, was not entitled to a casualty loss deduction, interest deduction and other miscellaneous deductions, and is liable for certain additions to tax. Petitioner bears the burden of proof and must establish that respondent's determination is erroneous. Rule 142(a).
Unreported Income
At trial and on brief, petitioner's position essentially is that he is unhappy that the tax liabilities which respondent determined are many times the amount of tax petitioner paid for 1979. In any event, it is manifest from the record that petitioner failed to report large amounts of his interest, dividend and capital gain income for 1980, 1981 and 1982. At trial, respondent offered the testimony of the revenue agent who examined petitioner's returns and the special agent who investigated petitioner's 1980, 1981 and 1982 tax liabilities. After the revenue agent initially ascertained that there were large amounts of unreported income, the matter was referred to respondent's Criminal Investigation Division for an investigation of possible criminal violations of the Internal Revenue laws. The special agent who conducted the investigation interviewed petitioner on two occasions. Petitioner was *429 uncooperative. When asked to identify particular items of income on the unreported income transcripts which he disputed, petitioner was unable to do so but claimed he had not earned any of the indicated unreported income. Petitioner could not provide a list of the stocks he owned, nor was he able to give the names of the stockbrokers he used. The special agent then issued administrative summonses to various payers listed on the transcripts or to their dividend payment agents for any documents or information on the income paid to petitioner. The agent explained that because of the large number of income items, he issued a summons only when an item of income was at least $ 200. He eventually issued 110 summonses to dividend payment agents throughout the country and 21 summonses to banks in the Massachusetts area. The special agent testified that in virtually every instance where a summons was issued the documents or information obtained confirmed that petitioner had received the income items indicated on the transcripts. In some instances, the special agent related that the information obtained disclosed that petitioner had income in addition to that reported on the transcripts. *430 After a decision was made not to recommend a criminal prosecution, the revenue agent determined petitioner's civil tax liabilities for 1980, 1981 and 1982. [3] She calculated petitioner's unreported income by adding the transcript income items to the additional income uncovered by the special agent, and then subtracting the income reported on the returns. Petitioner testified on his own behalf at trial. On cross-examination by respondent's counsel, he was asked to identify any specific items of income included in the notice of deficiency with which he disagreed. Petitioner was unable to do so; he only advanced some vague allegations that the methodology used by respondent was somehow suspect. As to some of the capital gains determined by respondent and based upon the special agent's investigation, petitioner complains that the gains were computed by assuming that he had a zero adjusted basis in the stocks sold. A schedule of the computations is contained in the notice of deficiency; a note to the schedule states *431 that a zero basis was used because no information was available concerning petitioner's tax basis. Petitioner bears the burden of proof regarding the cost basis of the securities sold. Rule 142(a). Since his petition alleged that respondent had used a zero basis for these stocks, petitioner was well aware of this determination long before trial. He could easily have presented evidence concerning cost basis, but chose not to do so. We refuse to speculate as to his tax basis in the sold shares. Since petitioner failed to offer any evidence establishing the basis in the shares sold, we sustain respondent's determination that the entire amount of the sales proceeds represented capital gain income. See Spurgeon v. Commissioner,T.C. Memo. 1977-326. We find that for 1980 petitioner had unreported income consisting of $ 17,927.86 of interest, $ 65,249.10 of dividends and $ 8,067.24 of net long-term capital gains; for 1981, we find that he had unreported income consisting of $ 32,908.48 of interest, $ 103,614.66 of dividends and $ 15,861.00 of net long-term capital gains; for 1982, we find that he had unreported income consisting of $ 7,847.54 of interest, $ 178,149.77 of dividends and *432 $ 21,137.51 of net long-term capital gains.
Claimed Deductions
Respondent in the notice of deficiency disallowed the 1980 deductions which petitioner claimed for a $ 4,200 casualty loss, $ 1,211.12 of interest expense and $ 3,000 of miscellaneous items, and the 1981 deduction which petitioner claimed for $ 3,000 of miscellaneous items. Petitioner has offered no evidence concerning his 1980 and 1981 deductions of miscellaneous items totalling $ 3,000 in each year. Similarly, he presented no evidence on his claimed $ 1,211.12 of interest expense for 1981. In fact, on cross-examination by respondent's counsel petitioner testified that he could not recall the $ 1,211.12 of interest expense and further stated that he tried not to borrow. As to the $ 4,200 casualty loss, petitioner offered only vague testimony that over the years many acts of vandalism have occurred to his West Newton house. He also testified that one year a tree blown over during a storm caused serious damage to one of his houses. To be entitled to a casualty loss deduction under sections 165(a) and 165(c)(3), petitioner must establish the nature of the casualty and when it occurred. Section 165(a) generally allows *433 a deduction for losses sustained during the taxable year. Section 165(c)(3) requires the loss to have arisen from fire, storm, shipwreck or other similar casualty or from theft. While petitioner in his testimony related events which might qualify as a casualty, he failed to establish whether any of such occurrences took place in 1980. Thus, no casualty loss deduction can be allowed for 1980 because of petitioner's failure to establish the year of the loss. Section 165(a); Elliott v. Commissioner,40 T.C. 304, 313-314 (1963). Petitioner also offered no evidence concerning the amount of the loss sustained. We accordingly must sustain respondent's determination disallowing the 1980 deductions for a casualty loss, interest expense and miscellaneous items, and the 1981 deduction for miscellaneous items.
Additions to Tax
Respondent for 1980, 1981 and 1982 determined that petitioner was liable in each year for an addition to tax for negligence or intentional disregard of rules and regulations. For the years in question, section 6653(a) (section 6653(a)(1) for 1981 and 1982) provided for a five percent addition when any part of the underpayment was due to the taxpayer's negligence or intentional *434 disregard of rules and regulations. Petitioner on this record is clearly liable for such additions to tax. Petitioner failed to maintain adequate records. The payers listed on the transcripts would have given petitioner the same information that was furnished to the Internal Revenue Service. Petitioner on his return did not complete Schedule B, specifying the various items of interest and dividends received for the year. Petitioner during the subsequent investigation could not even provide a list of his investments. While he testified that he completed his tax returns by referring to the Forms 1099 furnished him, such testimony is completely unreliable given the substantial income which was omitted for each year. It has been established that petitioner received the income indicated on the unreported income transcripts, plus the additional income discovered by the special agent. Petitioner's substantial omissions of income in each year are strong evidence of negligence. We find that petitioner is liable in each year for the five percent addition to tax under section 6653(a). Respondent for 1981 and 1982 further determined that petitioner was liable for additions under section 6653(a)(2) *435 equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Respondent in the notice of deficiency determined that the entire amounts of the 1981 and 1982 underpayments were attributable to petitioner's negligence. Petitioner was clearly negligent as to the portions of the underpayment resulting from his failure to report income items listed on the unreported income transcripts. As to the balance of the underpayments resulting from his omission of the additional income uncovered by the special agent and the disallowance of his 1980 and 1981 deductions petitioner bears the burden of proof. Rule 142(a). He has not established that any portion of the 1981 and 1982 underpayments were not attributable to negligence. We find that petitioner is liable for additions to tax in each year under section 6653(a)(2); such additions are to be determined on the basis that the entire underpayments were attributable to negligence. Lastly, respondent determined that petitioner was liable for an addition to tax for 1982 under section 6661 equal to 10 percent of the underpayment. [4] Respondent in the notice of deficiency determined that the addition should *436 be imposed on the basis that the entire underpayment was attributable to petitioner's understatement of tax. For an understatement of tax to be considered substantial, the amount must exceed the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Section 6661(b)(1)(A). As defined in section 6661(b)(2)(A), *437 the "understatement" is generally the tax required to be shown on the return, less the tax imposed which was reported on the return. The amount of the understatement is further reduced by the portion of the understatement attributable to any non-tax shelter item for which there was either substantial authority for the taxpayer's return position or adequate disclosure in the return. Section 6661(b)(2)(B). Petitioner has the burden of proof on the issue of his liability for the section 6661 substantial understatement addition. Rule 142(a). He has not argued that the 1982 understatement of tax is to be reduced under section 6661(b)(2)(B). See Karlin v. Commissioner,T.C. Memo. 1987-621. Petitioner understated his 1982 tax and the amount of such understatement was substantial. We find that petitioner is liable for the addition to tax under section 6661 in the amount determined by respondent in his notice of deficiency. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as applicable to the taxable years in question. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 6661 was added by Pub. L. 97-248, section 323(a), 96 Stat. 613, and is applicable to returns the due date for filing of which is after December 31, 1982. See n.4 at page 16, infra.↩
3. The special agent stated that while there were large amounts of unreported income, no criminal prosecution was recommended because of petitioner's age and health problems. ↩
4. As originally enacted by Pub. L. 97-248, section 323(a), 96 Stat. 613, the amount of the addition to tax under section 6661(a) was 10 percent of the amount of the underpayment attributable to the substantial understatement. The amount of the addition to tax was increased to 20 percent of the amount of such underpayment by Pub. L. 99-514, section 1504(a), 100 Stat. 2743, and then to 25 percent of such underpayment by Pub. L. 99-509, section 8002(a), 100 Stat. 1951. The amendment made by Pub. L. 99-509, section 8002(a), increasing the rate of the section 6661 addition to 25 percent, applies to all penalties assessed after the date of enactment of Pub. L. 99-509. Pallottini v. Commissioner,90 T.C. 498 (1988). Respondent has not sought to increase the section 6661(a)↩ addition to tax above the amount set forth in his notice of deficiency. See Rules 36(b) and 142(a).