T.C. Memo. 2010-248

UNITED STATES TAX COURT

GEORGE ELLSWORTH HARRIS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24102-06.                    Filed November 15, 2010.

George Ellsworth Harris, pro se.

Noelle White, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  This case presents the issue of whether petitioner George Ellsworth Harris is required to include $50,000 that he received from Integrated Communications Systems Network in his income for 1995.

FINDINGS OF FACT

During 1995, Harris was the president and CEO of a video-conferencing company called Integrated Communications Systems Network.[1]  This company, which we will refer to as "Integrated", was a subchapter S corporation in 1995.  Harris was one of the shareholders of Integrated.

Harris' salary was $10,000 per month during 1995.  During that year, Harris was awarded a bonus of $60,000 for exceptional performance in his handling of a particular transaction.  Because of a shortage of cash for one or two months, Integrated did not pay Harris the full amount of this salary and bonus during 1995.  Integrated reported on an IRS Form W-2, Wage and Tax Statement, that it had paid him $175,014 in 1995.

In 1995, Harris made payments to Integrated in order to purchase stock.  He also made payments to Integrated as short-term loans.  Integrated made substantial payments to Harris to reimburse him for expenses for the use of his airplane on company business.  Integrated issued Harris an IRS Form 1099-MISC , Miscellaneous Income, on which it reported that it had paid him $59,000 in nonwage income during 1995.[2]

---

[1]Some of the facts have been stipulated by the parties.  The Stipulation of Facts and its attached exhibits are incorporated by reference.

[2]The IRS has prescribed Form 1099-MISC for reporting certain kinds of income other than wages.  The form that Integrated
(continued...)

On his 1995 income tax return, which he filed in 1998, Harris reported $175,014 on the line for "Wages, salaries, tips, etc." and $59,000 on the line for "Other income." The $59,000 entry was further described on the return as:

  1099 MISC                                     59,000.

Harris had an accounting firm prepare his return and did not review it carefully before signing it.

In 2001, Harris sent the IRS a letter on which he claimed that his gross income for 1995 should be reduced by excluding the $59,000 he had reported as "Other income." However, Harris later conceded that $9,000 of the $59,000 represented a car allowance that was includable in income. In 2006, Harris filed an amended return for 1995 on which he claimed that his gross income was $50,000 less than he had originally reported. The amended return contained the explanation "TAXPAYER IMPROPERLY INCLUDED 1099MISC IN AMOUNT OF $50,000 ON ORIGINAL RETURN FILED."

The IRS rejected the assertion on the amended return and determined a deficiency of $30,223 in Harris's 1995 income tax for reasons unrelated to the tax treatment of the $50,000 entry. Harris filed a petition with the Tax Court.[3] Harris has now

---

[2](...continued)
issued Harris is not in the record. The record does not indicate which of its preprinted boxes for various categories of income Integrated may have used to report its payments to Harris.

[3]Harris lived in Maryland at the time he filed the petition.

conceded that his tax treatment of the issues giving rise to the deficiency was incorrect.  However, we still face the issue of whether the $50,000 entry is includable in Harris's income.

## OPINION

Harris contends that $50,000 of the $59,000 reported on the Form 1099-MISC is not includable in his income.  His theory is that the $50,000 was not compensation for services but was some type of payment that is not includable in income, such as a reimbursement for expenses, a repayment of a loan, or a return of capital.

The taxpayer generally has the burden of proof.  Rule 142(a), Tax Court Rules of Practice and Procedure.  This means that if the evidence before us is in equipoise or otherwise insufficient to carry that burden, we will generally sustain the IRS's determination.  See Elliott v. Commissioner, 40 T.C. 304, 311 (1963).  Section 7491(a) of the Internal Revenue Code shifts to the IRS the burden of proof on a given factual issue relevant to the taxpayer's liability if the taxpayer introduces credible evidence, has complied with applicable substantiation requirements, has maintained all required records, and has cooperated with reasonable information requests from the IRS.[4]

_____

[4]Sec. 7491(a) applies only to court proceedings arising in connection with examinations commencing after its date of enactment (July 22, 1998) and, in cases in which there is no examination, to court proceedings arising in connection with
(continued...)

> Credible evidence is the quality of evidence which,
> after critical analysis, the court would find
> sufficient upon which to base a decision on the issue
> if no contrary evidence were submitted (without regard
> to the judicial presumption of IRS correctness).

Weaver v. Commissioner, T.C. Memo. 2004-108 (using the definition set forth in H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995). We have found evidence which is vague or markedly incomplete not to be credible. Weaver v. Commissioner, supra. The taxpayer has the burden of proving that the requirements of section 7491 have been met. See Miner v. Commissioner, T.C. Memo. 2003-39; H. Conf. Rept. 105-599, supra, at 239; S. Rept. 105-174, at 45 (1998), 1998-3 C.B. 537, 581. Aside from section 7491, Harris has provided no other reason the burden of proof should be shifted to the IRS.

Harris argues that the $50,000 entry could have been a nontaxable reimbursement, a loan repayment, or a return of capital. We agree that these are all possibilities. But these possibilities are not supported by credible evidence.

Harris's testimony that the $50,000 was non-taxable was vague and uncertain. For instance, he could not say whether the

---

[4](...continued)
taxable periods or events beginning or occurring after the date of enactment. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727. We infer that the effective-date provision has been satisfied from the IRS's acknowledgment that it audited Harris's 1995 tax return and the fact that it argued about the substantive requirements, but not the effective-date requirements, of sec. 7491(a).

payment was a reimbursement, a loan repayment, a return of capital, or some other type of non-taxable payment.

James Carney, who was a director of Integrated and chairman of its compensation committee, testified that the $175,014 amount on the Form W-2 was "consistent" with his direct knowledge of Harris's total compensation for the year.  Carney admitted that his knowledge of Harris's compensation is incomplete.  He was not familiar with how Integrated operated before April 1995.  He did not personally handle the company's payroll, maintain its books from day to day, or prepare the Form W-2.

One item of documentary evidence upon which Harris focuses is a 1995 accounting entry that describes a $50,000 payment from Integrated to Harris in October 1995 as relating to an "account payable".  There is no direct evidence that this entry corresponds to a portion of the $59,000 reported on the Form 1099-MISC.  The accounting entry is an item on a "check register" of Integrated's disbursements greater than $20,000 over the period September 25 through October 15, 1995.  Harris did not present comprehensive accounting records for Integrated.  Harris also did not otherwise establish that the entry reflects the company's only accounting event that could plausibly explain the Form 1099-MISC.  We thus cannot infer from an absence of other pertinent accounting entries that this particular entry corresponds to the Form 1099-MISC.

The trial record contains several checks drawn upon Harris's personal account for payment to Integrated early in 1995. The purpose of the payments that were effected by these checks is unclear. Each check was for tens of thousands of dollars. One check, dated January 24, 1995, was for $50,000. Because this is the same amount as the October 1995 "account payable" entry, Harris asks us to conclude that he lent $50,000 to Integrated on January 24, 1995, and that it repaid him in October 1995. He has not set forth credible evidence on this point. Nothing in the record indicates that his $50,000 payment was a loan. And we do not have enough information about his dealings with Integrated to do more than speculate that the $50,000 payment Integrated made was a return of his payment. Moreover, as we discussed earlier, Harris has not tied the $50,000 that was reflected in the accounting entry to the $59,000 on the Form 1099-MISC.

Harris contends that a document entitled "Other Deductions" shows that Integrated did not deduct an amount corresponding to the $50,000 entry that he maintains should be excluded from his gross income. He argues that the treatment by Integrated of the $50,000 payment as nondeductible indicates that the payment was not income to him. We do not find the document to show whether

Integrated claimed a deduction for the $50,000 amount.  It does not purport to be a complete list of the deductions Integrated claimed for 1995.

In sum, Harris failed to offer any credible evidence in support of his contention that his gross income should be reduced by $50,000.  Consequently, there is no basis for shifting the burden of proof to the IRS.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.