ELAINE YOW GIRGIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Girgis v. Commissioner
Docket No. 8681-85.
United States Tax Court
T.C. Memo 1987-556; 1987 Tax Ct. Memo LEXIS 548; 54 T.C.M. (CCH) 1028; T.C.M. (RIA) 87556; November 5, 1987
Matthew E. Bates, for the petitioner. Edwina L. Charlemagne, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined *551 deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax
Section Section
Section
Section
Year
Deficiency
6651(a)(1) [1]
6653(a)
6653(a)(1)
6653(a)(2)
1980
$ 42,699.00
$ 10,674.75
$ 2,239.85
-0-
-0-
1981
9,616.00
480.80
-0-
$ 618.90
50% of interest
due on $ 9,616.00
1982
7,402.00
-0-
-0-
370.10
50% of interest
due on $ 7,402.00
After concessions, the issues for decisions are: (1) Whether petitioner is entitled to a theft loss deduction of $ 365,226 for taxable year 1980; (2) the proper amount of partnership loss and investment tax credit allocable to petitioner for taxable year 1980; (3) whether petitioner is entitled to net operating loss deductions of $ 308,750 and $ 272,959 for taxable years 1981 and 1982, respectively; (4) whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for failure *552 to file timely returns for taxable years 1980 and 1981; and (5) whether petitioner is liable for additions to tax pursuant to section 6653(a) for taxable years 1980, 1981, and 1982 due to underpayments of tax in those years being attributable to negligence or intentional disregard or rules or regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in West End, North Carolina at the time she filed the petition in this case. Petitioner is an accountant who has operated an accounting and tax preparation business in North Carolina for many years. On a trip to Europe during the summer of 1979, petitioner met Adly Girgis (hereinafter referred to as "Adly") at Geneva Airport in Switzerland. After a whirlwind romance, petitioner and Adly were married on December 15, 1979. Adly is also an accountant by profession. On February 11, 1980, petitioner and Adly entered into a partnership agreement. The resulting partnership, "Adly and Elaine Girgis, Accountants," was formed for the purpose of engaging in the profession of public accounting. *553 In pertinent part, the partnership agreement reads as follows: 5. It is agreed that each of the partners has contributed an equal amount to the capital of the partnership, either in cash or in property and all further contributions to capital shall be made on an equal basis. 6. The partners shall be in equal and joint control of the business, each shall give to the business his time and attention, and each shall receive a salary as may from time to time be agreed upon by both of the partners, which salaries shall be considered a part of the operating expense of the business and shall be deducted before computing profits. Profits of the partnership shall be divided equally in proportion to the contribution made by each partner to the partnership capital. On March 28, 1980, petitioner and Adly's home was burglarized. A report was filed with the Moore County, N.C. Sheriff's Department claiming that approximately $ 300,000 worth of gold and silver items had been taken from petitioner's home. On August 14, 1980, petitioner and Adly filed an insurance claim under their homeowners' policy in which they stated that the cash value of the items taken was $ 457,585. [2] The reimbursement *554 claimed under the policy was $ 45,000, the maximum allowable. Subsequently, a check in the amount of $ 40,000 was issued to Adly and petitioner jointly. [3] Petitioner endorsed the check, which was then cashed by Adly, who retained the proceeds. We find that petitioner has established a basis for loss of $ 40,980.95 in items which were hers and which were stolen from her home. Of that amount, $ 5,477.95 represents petitioner's basis in assets which she purchased and which she established through presentation of the following canceled checks: Payee
Amount
Brand Distributors
$   181.41
Southern Warehouse
891.10
Ellerbe Springs Co.
502.06
Myers
660.42
Tobias
1,173.08
Lee-Main & Assoc., Inc.
88.35
Aldens
162.73
Beulah McKinnon
208.00
American Express
762.09
Halinas
365.15
Grimes Jewelers
453.56
$ 5,447.95
*555 We accept petitioner's testimony that items of jewelry which were taken in the burglary were purchased by her with these checks. Petitioner also presented an appraisal of a diamond watch which states its value on April 19, 1977 as being $ 1,950. We accept petitioner's testimony that the appraisal was obtained shortly after she purchased the diamond watch for $ 1,900 and that this watch was also taken in the burglary. Petitioner also established a basis for loss of $ 33,633 in the following items which she received as gifts from Adly. The basis for loss is primarily taken from the insurance report filed by petitioner and Adly, subject to the noted adjustments: Basis for
Loss
Various gold pendants, bracelets,
charms, etc. (said by petitioner
to number 104)
[4] $    800
18K Butterfly Earrings
86
Necklace of 50 Mexican Pesos
[5] 2,400
5-piece Pearl and Diamond Set
[6] 5,000
18K Star Earrings
354
18K Cartouche Earrings
504
18K Love Knot Earrings
104
Brassware
1,200
Perfume
685
18K Gold Enamel Goldfish (2)
800
18K Key of Life w/ chain
1,600
18K Christ on Cross w/ chain
700
18K Zodiac Charm w/ chain
[7] 1,200
Various items of Garnet Jewelry
7,500
Gold Bracelet w/ 18 Ornaments
2,200
Brooch w/ 8 Diamond
2,000
Gold Chains w/ Butterfly Charms (2)
1,700
Butterfly Ring in Pearl w/ Red Stones
600
Heart in Platinum w/ Diamonds & Pearls
1,650
Coral Lace Neck Chain w/ Cameo and Ring
750
Diamond Cross on Platinum
1,800
$ 33,633
*556 Both the personal and business relationships between petitioner and Adly degenerated steadily during 1980, resulting in their separation and termination of the partnership on December 26, 1980. *557 Unable to amicably resolve their differences, Adly and petitioner agreed on May 8, 1981, to submit their marital disagreements and the resolution of their respective property rights (including dissolution of the partnership) to binding arbitration, pursuant to the provisions of North Carolina law. An order of arbitration was issued February 25, 1982, in which petitioner was ordered to pay Adly an amount equal to one-half of the net assets of the partnership in consideration for Adly's release of all his rights, title and interest in the partnership assets. Petitioner filed her personal income tax return for taxable year 1980 with respondent's representative at Sanford, North Carolina, on January 11, 1982. Petitioner had secured an automatic extension of time within which to file until June 15, 1981. No further requests for extension of tome to file were made. In her return, petitioner took a $ 365,226 theft lost deduction for property stolen in the March 28, 1980 burglary. Petitioner calculated this amount by reducing her claimed theft loss of $ 365,326 by the $ 100 floor on theft loss deductions, pursuant to section 165(c)(3). No part of the $ 40,000 insurance reimbursement *558 was used to reduce the claimed theft loss. Petitioner also deducted $ 11,382.14 as her share of the claimed net loss from operations of the partnership Adly and Elaine Girgis, Accountants for 1980. This amount was determined by petitioner as follows: Partnership Net Income Before Deductions
for Guaranteed Payments to Partners
$ 45,700.92 Guaranteed Payments to Adly
Cash
$ 34,213.75
Check
22,869.31
$ 57,083.06
Guaranteed Payments to Petitioner
23,450.52
(80,533.58)
Net Partnership Loss - per Form 1065
($ 34,832.66)
Petitioner's Share of Net Partnership
Loss - 100%
($ 34,832.66)
Guaranteed Payments Made to Petitioner
23,450.52 Petitioner's Net Partnership Loss
($ 11,382.14)
The item of $ 34,213.75, shown as a guaranteed payment to Adly, in fact represented an unauthorized misappropriation of funds by Adly from partnership receipts. For taxable year 1981, petitioner filed her income tax return on July 6, 1982. Petitioner had secured an automatic extension of time within which *559 to file until June 15, 1982. Petitioner requested no further extensions. On her 1981 return, petitioner claimed a net operating loss (NOL) carryover deduction of $ 308,750. The deduction of the $ 365,226 theft loss in 1980 is responsible for creation of the NOL carryover into 1981. For taxable year 1982, petitioner filed her return on August 19, 1983. Petitioner had secured an automatic extension of time within which to file until August 15, 1983. No further extensions were requested. On her 1982 return, petitioner deducted $ 272,958.59 as an NOL carryover from 1980. On January 7, 1985, respondent mailed to petitioner statutory notices of deficiency for taxable years 1980, 1981, and 1982. As to taxable year 1980, respondent denied petitioner's theft loss deduction in its entirety. He also determined that the partnership was not entitled to deduct the $ 34,214 in cash allegedly withdrawn from the partnership by Adly. In addition, he determined that petitioner's allocable share of partnership items was 50 rather than 100 percent. Petitioner's income from the partnership was thus redetermined as follows: Partnership Loss per Form 1065
($ 34,832)
Add Back Disallowed Guaranteed Payments
34,214 Partnership Loss
($ 618)
Petitioner's Share of Partnership Loss - 50%
($ 309)
Guaranteed Payments to Petitioner
23,450 Petitioner's Net Partnership Earnings
[8] $ 23,141 *560 The notice also determined that petitioner was entitled to only 50 percent of $ 6,236 of investment tax credit generated by the partnership in 1980, or $ 3,118. As respondent's adjustments eliminated petitioner's net operating loss (NOL) for that year, respondent determined that petitioner was not entitled to NOL carryforwards of $ 308,750 and $ 272,959 for taxable years 1981 and 1982, respectively. Respondent determined negligence additions for all three taxable years at issue, and late filing additions for taxable years 1980 and 1981. Petitioner made a timely petition to this Court for redetermination of the deficiencies on April 4, 1985. OPINION I. Theft Loss Deduction
Losses from the theft of property are deductible for Federal income tax purposes to the extent they exceed $ 100. Sec. 165(c)(3). The amount of the theft loss is the lower of the fair market value of the property immediately prior to the theft, or the adjusted basis of such property as determined under *561 section 1011 for purposes of determining loss from its sale or other disposition, but only to the extent not compensated for by insurance or otherwise. Secs. 165(a), (b), and (e); secs. 1.165-7(b)(1), 1.165-8(c), Income Tax Regs.; Helvering v. Owens,305 U.S. 468, 471 (1939). Under section 1011 and the sections to which it refers, the adjusted basis of property is determined primarily by the manner in which the property was acquired. The basis of property acquired by purchase is its cost. Sec. 1012. The basis of property acquired from a decedent is ordinarily its fair market value at the date of the decedent's death. Sec. 1014. For purposes of determining loss, the basis of property acquired by gift is the lesser of the basis in the hands of the donor or the last preceding owner who did not acquire the property by gift, or its fair market value at the time of the gift. If the basis of the property in the hands of the donor or last nondonee owner cannot be determined, the basis of the property shall be the fair market value, as determined by respondent, of the property on the date or approximate date on which the donor or last preceding nondonee owner acquired *562 it. Sec. 1015(a). Deductions, including theft loss deductions, are a matter of legislative grace, and taxpayers must satisfy the specific deduction she claims is with petitioner. [9]Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Respondent maintains that petitioner has failed to meet this burden in that she has failed to establish that she has sustained any theft loss in excess of the insurance recovery of $ 40,000.
In order to prevail, petitioner must establish the following facts: (a) that she owned the property which she alleges was stolen from her; (b) that the property was in fact stolen; (c) her basis in the stolen property and the fair market value of the property immediately prior to its theft; and (d) that she was not compensated for the loss of the stolen property by *563 insurance or otherwise. We analyze below the proof petitioner has offered with respect to each of these requirements. (a) Ownership Petitioner must prove that she was the owner of the property stolen. Rink v. Commissioner,51 T.C. 746, 753 (1969); Draper v. Commissioner,15 T.C. 135 (1959). We accept petitioner's testimony, corroborated by several of petitioner's witnesses, that she was a collector of fine jewelry and silverware and that she had accumulated a sizable collection through March 28, 1980. Respondent, however, contests petitioner's ownership of several specific items. He bases his position on Aldy's testimony that he retained ownership of a five-piece pearl and diamond set and a set of sterling silver that petitioner claims she received from his as gifts. Petitioner seeks theft loss deductions of $ 30,000 and $ 93,150 with respect to the pearl and diamond set and the silverware, respectively. As to the five-piece pearl and diamond set, Aldy's testimony directly contradicts an affidavit he gave under oath pursuant to arbitration proceedings in which he stated that he had given this item to petitioner as a wedding gift. We find *564 Adly's testimony before this Court, that he lied under oath in the affidavit so as to "establish the strategic points of the arbitration," incredible. We consider his affidavit to be more credible. Petitioner's testimony, corroborated by Adly's affidavit, that she received this item as a wedding present is credible and we hold that she was the owner of this item. As regards the silverware, we find in the record no evidence of petitioner's ownership other than her uncorroborated testimony. The silverware is not mentioned in Adly's affidavit. A taxpayer's testimony alone is sufficient to prove entitlement to a deduction in some cases; however, it need not be accepted where it is "improbable, unreasonable, or questionable." Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. Given the conflict in the testimony, we need more than petitioner's conclusory statement in order to find that she has borne her burden of proof as to this element. (b) Theft Petitioner must also prove that a theft occurred. Jacobson v. Commisioner,73 T.C. 610, 613 (1979); Elliott v. Commissioner,40 T.C. 304, 311 (1963). *565 We accept petitioner's testimony, which is corroborated in part by the Sheriff's Department Complaint-Investigative Report and the insurance reimbursement, that her home was burglarized on March 28, 1980, and that certain items which she owned were among the property stolen. (c) Basis and Fair Market Value of Stolen Items Petitioner must also prove the amount of the loss. Pfalzgraf v. Commissioner,67 T.C. 784, 787 (1977). The amount of the loss is the lesser of petitioner's basis in the property or its fair market value immediately prior to its theft. (i) Purchased Items We have found that petitioner has established a basis for loss of $ 7,347.95 in items which she had purchased and which were taken in the burglary. This is the amount for which petitioner has produced canceled checks or other documentary evidence of her cost. [10] Petitioner conducted an extensive search of her records, going back to 1954, in order to establish her basis in the stolen items. Although petitioner testified that she possessed additional documentation substantiating her cost, and provided several schedules summarizing this additional evidence, her failure to produce this evidence *566 gives rise to the inference that no such evidence exists. Dougherty v. Commissioner,60 T.C. 917, 932-33 (1973). Therefore, we hold that petitioner has satisfied her burden of proof as to basis in the stolen items which she had purchased only to the extent of the $ 7,347.95, for which she has provided documentary evidence. (ii) Gifts Petitioner claims a theft loss with regard to a large number of items which she claims to have received as gifts from Adly, her Aunt Ottie, and various other persons. Respondent concedes to petitioner a basis of $ 4,950 in items which petitioner received as gifts from Adly. Respondent bases this figure on Adly's testimony at trial. As stated previously, we place little weight on this testimony. We place more weight on Adly's affidavit executed pursuant to the arbitration proceedings and the theft loss report submitted by Adly *567 and petitioner to their insurance company. In his affidavit, Adly states that his cost of items given to petitioner is stated in the insurance report. Since the maximum recovery under the policy was $ 40,000, petitioner and Adly would have little motivation for inflating the value of the stolen items above this amount. We therefore hold that petitioner has established her basis in items given to her by Adly to the extent of the $ 33,633, which is corroborated by the theft loss report and Adly's affidavit. [11]
As to all other items which petitioner received as gifts from Adly, her Aunt Ottie, or others, petitioner has simply failed to carry her burden of proof as regards their basis. [12] Where petitioner fails to prove basis, we are unable to determine the amount of the deductible loss. Elliott v. Commissioner, supra at 312. We are cognizant of a taxpayer's difficulty in substantiating the existence, cost basis, and fair market value of personal items which have been accumulated *568 over the years. However, petitioner's testimony, various lists, and miscellaneous affidavits executed pursuant to these proceedings are simply insufficient for us to make even a reasonably accurate estimate of her basis in the items stolen. We accordingly decline petitioner's invitation to estimate the amount of her theft loss using the Cohan rule. Cohan v. Commissioner,39 F.2d 540, 543-44 (2d Cir. 1930). In sum, we find that the measure of petitioner's theft loss is her basis in the items stolen. We also find that she has established a basis of $ 40,980.95 in items stolen in the March 28, 1980 burglary, consisting of $ 7,347.95 in items she purchased herself, and $ 33,633 in items received as gifts from Adly. (d) Insurance Proceeds Petitioner claims that respondent erred in *569 determining that her theft loss should be reduced by the $ 40,000 insurance settlement made as a result of the burglary. Soon after her marriage, petitioner had both the deed to her home and her homeowner's insurance policy changed to both her and Adly's names jointly. Thus, the $ 40,000 insurance reimbursement check was made payable to petitioner and Adly jointly. Petitioner signed the check which she than gave to Adly who negotiated it and kept the proceeds. Since Adly retained the proceeds, petitioner contends that no part of it should reduce her theft loss. Even assuming that Adly did not have petitioner's consent to take the check proceeds, we still find that a portion of the insurance proceeds should reduce petitioner's theft loss. The fact is that an insurance settlement was made and that at least a portion of the $ 40,000 was compensation to petitioner for loss of her personal property. The fact that the insurance proceeds may have been misappropriated by her husband in a later, separate incident, is irrelevant to a determination of petitioner's net loss of a result of the theft. [13]
*570 Petitioner therefore must reduce her theft loss by that portion of the $ 40,000 insurance recovery which represents a reimbursement for loss of her personal property. Since $ 95,330 of the total loss of $ 457,585 claimed on the loss report filed with the insurance company was attributable to Adly's separate property, we exclude 95,330/457,585 of the insurance proceeds or $ 8,333 from petitioner's recovery leaving her with a reimbursement of $ 31,667. Petitioner is thus entitled to a theft loss deduction of $ 9,213.95, which is the amount by which her established basis of $ 40,980.95 exceeds her insurance reimbursement of $ 31,667 and the $ 100 floor on theft loss deductions. II. Partnership Issues
For the taxable year 1980, petitioner claims a deduction of $ 11,382.14, derived from the operations of the Adly and Elaine Girgis partnership. The deduction is arrived at by netting the $ 23,450.52 of guaranteed salary payments received by petitioner from the partnership, against the net partnership loss of $ 34,832.66, [14] 100 percent of which petitioner claims is allocable to her. a. Partnership Loss Calculation Petitioner *571 calculated the partnership net income by deducting as guaranteed payments the $ 34,213.75 she alleges Adly withheld without authorization from partnership cash receipts in addition to the $ 22,869,31 he withdrew by check from the partnership. Respondent denied the deduction for guaranteed payments to the extent of the $ 34,213.75. In her second amended petition, petitioner claims, as an alternative ground, that the $ 34,213.75 allegedly misappropriated by Adly should be allowed as a deduction of the partnership as an embezzlement loss. When a partner embezzles partnership funds he is engaging in a transaction with the partnership other than in his capacity as a member of the partnership. Obviously a partner has no authority to steal. In such case, the partnership is entitled to deduct the loss as if a non-partner was responsible for the embezzlement. Sec. 707(a); Harell v. Commissioner,T.C. Memo. 1978-211. We find petitioner's alternative argument persuasive and hold that the partnership was entitled to deduct the $ 34,213.75 in partnership receipts misappropriated by Adly as an embezzlement loss. Two ex-partnership employees testified that responsibility *572 for the deposit of partnership receipts rested with Adly solely. One of these ex-employees testified that although partnership receipts consisted of both checks and cash, Adly would only deposit the checks into the partnership bank accounts. We found this testimony to be credible and place no weight on Adly's testimony that he properly accounted for all partnership receipts. The only inference to be drawn from Adly's failure to properly account for the cash receipts is that they were converted to his own use without authorization. The amount of Adly's misappropriation was determined by petitioner by comparing receipts on partnership books and records, with deposits into the partnership bank accounts. Since only Adly was responsible for making deposits, she attributes the entire difference of $ 34,214 to Adly's misappropriations. We find that petitioner has borne her burden of establishing that $ 34,214 was the amount of partnership receipts misappropriated by Adly. Respondent argues that petitioner's proof is insufficient in that she failed to introduce the original books and records into evidence, supporting her summaries used at trial. However, the partnership books and *573 records were made available to respondent in the courtroom, who declined to make use of them on cross-examination to test petitioner's calculations. We therefore hold that petitioner's uncontroverted testimony as to the amount of the misappropriation, supported by her work papers summarizing the partnership books and records, satisfies her burden of proof and that the partnership was entitled to deduct the $ 34,214 in determining partnership loss. b. Partnership Loss Allocation Petitioner claims that she is entitled to an allocation of 100 percent of any loss suffered and investment credit generated by the partnership during taxable year 1980. She interprets the partnership agreement as requiring an allocation of loss and credits in accordance with each partner's proportionate contribution to the total partnership capital. Since she claims Adly contributed nothing to partnership capital, petitioner asserts that 100 percent of the loss and credits is allocable to her. Respondent reads the same partnership agreement as requiring an equal allocation of partnership loss and tax credits between the two partners. In general, a partner's distributive share of a partnership's income, *574 gain, loss, deduction or credit is determined by the partnership agreement. Sec. 704(a). The partnership agreement includes the original document, plus any subsequent modifications, whether written or oral, agreed to by the partners. Sec. 761(c). In addition, the agreement includes any provisions of Federal, state or local law which govern the affairs of the partnership. The agreement itself makes no mention of the manner in which partnership losses are to be allocated; thus we look to local law to determine the allocation. Sec. 1.761-1(c), Income Tax Regs.North Carolina law requires, unless the agreement specifies otherwise, that partners share in partnership losses to the same extent as they share in partnership income. [15]N.C. Gen. Stat. sec. 59.48(1) (1982). The partnership agreement, quoted in our findings of fact, calls for an equal division of profits between petitioner and Adly. This agreement *575 was based on the concurrent agreement to make equal capital contributions to the partnership, which was acknowledged in the contract. The agreement does state, in somewhat contradictory terms, that profits should be distributed "equally in proportion to the contribution made by each partner to the partnership capital." We note that each partner was to receive payments to compensate for his or her work done for the partnership. Thus we infer that the profit-sharing ratio was intended to provide an equal return on each partner's capital contribution. Petitioner has failed to prove that the capital contributions of Adly and herself were unequal, so as to justify an allocation of profit other than the even division determined by respondent. We base this conclusion in part on Adly's testimony, supported by canceled checks, that he had advanced substantial sums to petitioner from the time they met until the partnership was formed on February 11, 1980. Petitioner has produced no evidence to refute the reasonable inference that these sums formed the basis of Adly's contribution to the partnership's capital. We also place weight on the fact that the arbitration order determined that the *576 net assets of the partnership be divided equally between petitioner and Adly, supporting the inference that each had contributed equally to partnership capital. Finally, we have the partnership agreement itself which recites that Adly and petitioner had contributed equally to its capital. We thus hold that petitioner is entitled to an allocation of 50 percent of partnership losses and investment tax credits. III. Net Operating Loss Carryovers
After concessions and our findings herein, we conclude that petitioner had taxable income in 1980 of $ 64,356. [16] Since an NOL was not generated in 1980, there are no carryovers for other years. Sec. 172. *577 IV. Untimely Returns Additions
Respondent determined additions to tax for taxable years 1980 and 1981 due to petitioner's failure to file returns for those years in a timely manner. Section 6651(a)(1) imposes additions to tax of 5 percent of the tax required to be shown on the return for every month or fraction thereof that the return is late, up to a maximum of 25 percent. Additions to tax are not imposed if the failure to file timely returns is due to reasonable cause and not willful neglect. Sec. 6651(a)(2). Reasonable cause for a late filing exists when the taxpayer exercises "ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." Sec. 301.6651-1(c), Proced. and Admin. Regs. The burden is upon petitioner to establish that her late filing was due to reasonable cause. Horton v. Commissioner,86 T.C. 589, 597 (1986); Richardson v. Commissioner,72 T.C. 818, 827 (1979); Rule 142(a). Petitioner contends that she was unable to gain access to records needed to complete her return since these records were in the hands of third parties pursuant to the arbitration of her dispute with *578 Adly. She claims that disputes over partnership allocations and the circumstances surrounding her separation and divorce contribution to a situation in which her failure to file timely returns was due to reasonable cause. We are unpersuaded by petitioner's argument. Petitioner did not provide any specific evidence as to what records were unavailable and during what periods. Without this information we cannot come to a reasoned conclusion that the unavailability of records was the reason petitioner was unable to file her returns on time. The agreement to submit the partnership dispute to arbitration was entered on May 8, 1981, thus records with which to prepare her 1980 return must have been available to petitioner at least until that date. The order of arbitration was dated February 25, 1982, at which time the arbitrator presumably would have no further use for petitioner's books and records. These records thus would have been available to petitioner from that date until the July 15, 1982 extended due date within which to complete her 1981 return. Thus, from the evidence provided by petitioner, we can only infer that her books and records were available to her for preparation *579 of her return for significant periods of time. Even assuming that access to the books and records during the period in which they were in the arbitrator's custody was necessary in order that petitioner be able to file her return on time, there is no evidence that petitioner made any request for access to these documents for that purpose -- a course of action petitioner would have had to take in order for her to have exercised "ordinary business care and prudence." [17]
Petitioner seems to place great weight on the fact that she believed she had no tax due with either return. This is irrelevant. The taxpayer's duties to file returns and pay tax are separate and distinct. The fact that petitioner may have acted reasonably with regard to her duty to pay tax is of no importance when considering whether she has acted reasonably in discharging her duty to file returns. Thus, we conclude that petitioner is liable for the section 6651(a)(1) additions to tax due to her failure to file timely *580 returns for taxable years 1980 and 1981. V. Negligence Additions
We are persuaded that petitioner did not intentionally disregard any rule or regulation, and that she was not negligent in preparation of her return in any of the taxable years at issue. We have previously noted the taxpayer's difficulty in substantiating the existence and basis for loss of personal items acquired by gift of otherwise over many years. The mere fact that petitioner's proof was found inadequate to support the bulk of her claimed theft loss does not require us to find that petitioner's underpayment was due to negligency. Robinson v. Commissioner,51 T.C. 520, 541-542 (1968), affd. and remanded for recomputation 422 F.2d 873 (9th Cir. 1970). We find that a theft occurred and that petitioner's efforts to substantiate her loss, although largely inadequate, were reasonable under the circumstances. Similarly, we find her decision not to reduce her theft loss by any portion of the $ 40,000 insurance reimbursement, though erroneous, to have been a position taken in good faith, on a difficult issue. See Dillin v. Commissioner,56 T.C. 228, 248 (1971). *581 We also find that petitioner's marital difficulties, the acrimonious dissolution of the partnership, and the demands of keeping her business afloat, collectively combined to create a situation in which petitioner's failure to carry back, rather than forward, the NOL deductions to which petitioner reasonably believed she was entitled cannot be attributed to negligence. We thus find that petitioner is not liable for the additions to tax imposed under section 6653(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court rules of Practice and Procedure, except as otherwise noted. ↩
2. The listing of stolen property which accompanied the claim, indicated that $ 95,330 of the $ 457,585 value of stolen oods was attributable to Adly's separate property. ↩
3. no explanation has been iven as to the discrepancy between the maximum reimbursement on the policy stated on the claim form ($ 45,000) and the $ 40,000 actually paid on the claim. ↩
4. We do not accept the $ 10,000 value placed on these items in the insurance report. The lack of specificity in the description of the property leads us to the conclusion that the $ 10,000 figure is merely a guess as to cost. Since no other evidence is provided by petitioner as to this item, we must accept the loss basis of these items conceded by respondent on brief of $ 800.↩
5. Although the insurance report listed the cost of this item as $ 6,500, it also stated that its fair market value was $ 2,400 which is thus the measure of loss. Helvering v. Owens,305 U.S. 468, 471↩ (1939). 6. Although the insurance report lists this item as having a cost of $ 30,000, in an affidavit executed by Adly pursuant to arbitration proceedings, he states that it had a value of $ 30,000 and a cost of $ 5,000. ↩
7. Although two Zodiac charms with chains are listed on the insurance report, Aldy's affidavit states that one of them was a gift to petitioner's daughter, not petitioner. ↩
8. So described in respondent's statutory notice. In fact, this figure represents petitioner's guaranteed payment, minus 50 percent of the net partnership loss as determined by respondent.↩
9. We decline petioner's invitation to shift the burden of proof as to the theft loss issue based on petioner's assertion that respondent's deficiency determination on this issue was "arbitrary and capricious." As regards entitlement to deductions, the burden of proof is always upon the taxpayer. Chaum v. Commissioner,69 T.C. 156, 163-164↩ (1977). 10. The only evidence of market value submittted is petitioner's unsubstantiated testimony. since the items at issue are jewelry and silverware, items that rarely suffer diminutions in value from mere passae of time, we accept that their fair market value when stolen was not less than their cost. ↩
11. Since most of these items were purchased in November 1979, less than six months before their theft, we accept that their fair market value when stolen was not less than their cost. ↩
12. No issue has been raised as to whether respondent is required to determine a basis for the items received by gift pursuant to sec. 1015(a), and we therefore do not consider it. Markwardt v. Commissioner,64 T.C. 989, 997 (1975); see Caldwell & Co. v. Commissioner,234 F.2d 660 (6th Cir. 1956), revg. 24 T.C. 597↩ (1955). 13. Petitioner raises for the first time in her post-trial reply brief an alternative argument that she suffered an additional theft loss when Adly took the insurance proceeds. This new issue was raised much too late to receive our consideration. See Frentz v. Commisioner,44 T.C. 485, 490-491 (1965), affd. 375 F.2d 662↩ (6th Cir. 1967). 14. This figure was accepted by rspondent. ↩
15. Although the allocation of tax credits is not specifically mentioned in the North Carolina statute, we presume that credits would also be allocated among the partners in accordance with their profit sharing ratios when no allocation is provided for in the agreement. ↩
16. Computed as follows: ↩
Taxable Income on Return as Filed
($ 308,853)
Conceded Depreciation Adjustment
409 Conceded Filing Status/Excess Itemized
Deduction Adjustment
(600)
Conceded Sales Tax Adjustment
(28)
Theft Loss Adjustment:
Add Back Theft Loss Per Return
$ 365,226 Deduct Allowed Theft Loss
(9,214)
356,012 Partnership Adjustment:
Add Back Net Partnership
Loss Per Return:
Partnership Loss
($ 34,832 x 100%)
$ 34,832 Guaranteed Payments
(23,450)
11,382 Add Net Partnership Gain
As Adjusted:
Share of Partnership Loss
($ 34,832 x 50%)
(17,416)
Guaranteed Payments
23,450 6,034 17,416 Taxable Income as Adjusted
$  64,356 17. Nor does this record show that petitioner sought any further extension of time under sec. 6081(a) within which to file her returns, beyond the automatic extensions which she had secured. ↩