ELAINE YOW GIRGIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Girgis v. Commissioner
Docket No. 16056-88
United States Tax Court
T.C. Memo 1991-191; 1991 Tax Ct. Memo LEXIS 333; 61 T.C.M. (CCH) 2516; T.C.M. (RIA) 91191; April 30, 1991, Filed Girgis v. C.I.R., 888 F.2d 1386, 1989 U.S. App. LEXIS 15815 (4th Cir., 1989)
*333 Decision will be entered under Rule 155. Mathew E. Bates, for the petitioner. Ross A. Rowley, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1983
$ 20,277.52
$ 1,013.88
50 percent of the
interest due on
$ 20,277.52
1984
24,897.92
1,244.90
50 percent of the
interest due on
$ 24,897.92
1985
26,589.23
1,329.46
50 percent of the
interest due on
$ 26,589.23
After concessions by the parties, [2] the issues for decision are: (1) Whether petitioner is entitled to deductions for depreciation of a building located at 272 Front *334 Street for any period prior to the closing of petitioner's purchase of the building on August 16, 1985; (2) whether petitioner is entitled to deductions for expenses related to the building which were incurred prior to August 16, 1985; (3) whether petitioner may deduct travel expenses related to the building which were incurred prior to August 16, 1985; (4) whether petitioner is entitled to a tax credit in connection with the rehabilitation of the building; and (5) whether petitioner is liable for additions to tax for negligence or intentional disregard of the rules and regulations. [2]
*335 The parties agree that for the purposes of this case, the amount, if any, of net operating loss carryover under section 172 for petitioner's taxable years 1983, 1984, and 1985 is to be determined consistently with the opinion of the United States Court of Appeals for the Fourth Circuit in Girgis v. Commissioner, 888 F.2d 1386 (4th Cir. 1989), affg. in part and revg. and remanding in part T.C. Memo 1987-556. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in West End, North Carolina, at the time she filed her petition in this case. Petitioner filed individual Federal income tax returns for each of the taxable years in issue. As of August 1984, certain real property, located at 272 Front Street, Wilmington, North Carolina, known as the "Efird Building" (the building) was owned by a limited partnership named 272 Front Street (the partnership). Mr. Frederick Moretti (Mr. Moretti) and Mr. Samuel B. Ashford (Mr. Ashford) were the general partners in the partnership, and Mr. Fred L. Harrison (Mr. Harrison) was *336 the limited partner. The building was originally built in 1906. In 1979, the building was certified by the National Parks Service as a certified historic structure. In 1982, the building was purchased by Mr. Moretti and his wife and subsequently transferred to the partnership. After the transfer of the building to the partnership, the partnership renovated the building. The renovations consisted of installing new elevators, new walls, a new roof, windows, painting, acoustical tile ceilings, heating and air conditioning, plumbing and electrical systems. The partnership reported investment tax credits with respect to the rehabilitation of the building on its 1983 and 1984 Federal partnership returns which it passed through to the members of the partnership. Mr. Harrison and Mr. Ashford claimed these pass-through credits on their Federal income tax returns. By mid-1984, the partnership decided to sell the building. During either July or August of 1984, Mr. Moretti contacted Harold D. Albright, Jr. (Mr. Albright) to help sell the building. Mr. Albright learned through an associate that petitioner might be interested in purchasing the building. Mr. Albright contacted petitioner *337 in late August 1984 to discuss the possibility of her purchasing the building. In December 1984, the partnership and petitioner reached an informal agreement on the general terms of the sale of the building to petitioner. On December 28, 1984, petitioner, petitioner's daughter, Mr. Moretti, and Mr. Albright met in Charlotte, North Carolina, to discuss the purchase of the building. At this meeting, Mr. Albright presented a proposed written agreement to Mr. Moretti and petitioner for their signatures. However, Mr. Moretti and petitioner believed that the proposed written agreement did not fully protect their interests and they wanted an attorney to draft the agreement. Mr. Moretti took the proposed contract to his attorney to redraft. At the meeting on December 28, 1984, petitioner paid Mr. Albright a partial sales commission in the amount of $ 7,500. This represented part of Mr. Albright's commission for "selling" certain properties owned by petitioner to the partnership. These properties were to be transferred to the partnership as part payment for petitioner's purchase of the Efird building. On February 22, 1985, petitioner and Mr. Moretti executed an "Offer to Purchase *338 and Contract" which provided for the purchase of the building by petitioner from the partnership. This document, and the addendum which is attached to it and cross referenced in the document itself, provides in pertinent part: OFFER TO PURCHASE AND CONTRACT 3. PURCHASE PRICE: The purchase price is $ 1,710,000.00 and shall be paid as follows: (a) $ 75,000.00 in earnest money paid by cash (cash, bank, certified, or personal check) with the delivery of this contract, to be held in escrow by Wardlow, Knox, et al. as agent, until the sale is closed, at which time it will be credited to Buyer, or until this agreement is otherwise terminated and it is disbursed in accordance with the Standard Provisions on the REVERSE SIDE HEREOF. * * *
8. POSSESSION: Possession shall be delivered at closing * * * . * * *
STANDARD PROVISIONS * * * 4. PRORATIONS AND ADJUSTMENTS: Unless otherwise provided the following items shall be prorated and adjusted between the parties or paid at closing: (a) Ad Valorem taxes on real property shall be prorated on a calendar year basis to the date of closing. (b) Ad Valorem taxes on personal property for the entire year shall be paid *339 by Seller. * * * (d) Rents, if any, for the Property shall be prorated to the date of closing. (e) Accrued, but unpaid, interest and other charges to Seller, if any, shall be computed to the date of closing and paid by Seller; interest and other charges prepaid by Seller shall be credited to Seller at closing and paid by Buyer. (Other charges may include FHA mortgage insurance premiums, private mortgage insurance premiums and Homeowner's Association dues.)
5. FIRE OR OTHER CASUALTY: The risk of loss or damage by fire or other casualty prior to closing shall be upon Seller. 6. CONDITIONS: (a) The Property must be in substantially the same condition at closing as on the date of this offer, reasonable wear and tear excepted. * * *
ADDENDUM TO OFFER TO PURCHASE AND CONTRACT BETWEEN ELAINE YOW GIRGIS, (Buyer) and 272 FRONT STREET, a Limited Partnership (Seller)
* * * (a) Seller agrees to, at its own expense meet all building specifications contained in the original lease which are effective as of the date of closing. * * * (c) The GSA [the building's main tenant] requirement of a 100 square foot "flammable air locker" for the U.S. Coast Guard tenant will *340 be completed by the Seller within a reasonable time, not necessarily prior to closing. Since this item was omitted by the GSA in drafting the original specifications for the building, Seller plans to negotiate additional funds to be paid by the GSA for completing this item. These funds shall be paid to the Seller for the completion of this additional work whether or not the work is completed before or after closing. * * * (f) Except as specified above the Seller is not responsible for any other repairs or alterations to the building unless said repairs result from the Buyer's inspection, prior to closing, pursuant to paragraph 8 of the standard provisions of this Contract. (g) All monies due pursuant to the lease with the GSA, except as specifically provided above, shall be pro-rated between the parties to the date of closing. The parties acknowledge that the Seller is now owed approximately $ 55,000.00 by the GSA for RWA items and parking rental. These funds along with all other charges accruing before closing shall be paid to the Seller.
* * * Petitioner dated this contract to reflect that the date of her offer was December 28, 1984. The contract does not show *341 a date of acceptance. Petitioner issued a check in the amount of $ 75,000 to Mr. Moretti at the February 22, 1985, meeting. This check was for the earnest money specified in the "Offer to Purchase and Contract." On August 16, 1985, the parties closed on the sale of the building, and petitioner obtained title and possession. Petitioner acquired a basis in the building of $ 1,737,230, $ 1,672,084 of which was allocable to the building itself and $ 65,146 of which was allocable to the land on which the building was built. The building had total space available for lease of 25,493 square feet. As of April 11, 1985, 24,245 square feet was being leased by the General Services Administration (GSA). The term of the lease was from July 21, 1983, to July 20, 1999, with a 10-year renewal option. The lease of the building by GSA was assigned by the partnership to petitioner on August 16, 1985, concurrently with the conveyance of the building to petitioner. Petitioner claimed depreciation deductions of $ 695 and $ 83,338 with respect to the building on her Federal income tax returns for the years 1984 and 1985, respectively. In his notice of deficiency, respondent determined that petitioner *342 was entitled to no depreciation deduction with respect to the building for 1984, and was entitled to a depreciation deduction with respect to the building of $ 33,355 for 1985. The amount of depreciation for 1985, as allowed in the notice of deficiency, was based on respondent's determination that petitioner acquired ownership of the building on August 16, 1985, with a depreciable basis of $ 1,667,741. Petitioner claimed a deduction of $ 189 for automobile and travel expenses related to the building on her 1984 Federal income tax return. In his notice of deficiency, respondent disallowed such deduction in its entirety. Petitioner claimed a deduction for building related rental expenses (not including depreciation) of $ 258,476.85, and reported income from the building of $ 222,388.10 on her 1985 Federal income tax return. In his notice of deficiency, respondent determined that petitioner is entitled to deductions for rental expenses (not including depreciation) of only $ 102,519.88 and realized income of only $ 75,564.00. On Form 3468 (Computation of Investment Credit) of her 1984 Federal income tax return, petitioner claimed an investment credit for "certified historic structures" *343 in the amount of $ 343,996 relative to the building. The office of the Secretary of the Interior has no record that the Secretary has certified that the rehabilitation of the building was consistent with the historic character of the building or the district within which it was located. At all times pertinent hereto, petitioner was a self-employed accountant, and as part of her business, she prepared Federal income tax returns for her clients. OPINION The first issue for decision is whether petitioner acquired a depreciable interest in the building prior to August 16, 1985. A depreciable interest is predicated on an investment in property that would subject the taxpayer to an economic loss upon the property's deterioration through exhaustion, wear and tear, and obsolescence. Derr v. Commissioner, 77 T.C. 708, 726 (1981); Baird v. Commissioner, 68 T.C. 115, 123 (1977). Prior to the completion of the sale, petitioner had no investment interest. See Derr v. Commissioner, supra at 726; Baird v. Commissioner, supra at 124. For purposes of Federal income taxation, a sale occurs upon the transfer *344 of the benefits and burdens of ownership rather than upon the satisfaction of the technical requirements for the passage of title under State law. Derr v. Commissioner, supra at 723-724; Yelencsics v. Commissioner, 74 T.C. 1513, 1527 (1980). The question of when a sale is complete for Federal income tax purposes is essentially one of fact. Baird v. Commissioner, supra at 124. The applicable test is a practical one which considers all the facts and circumstances, with no single factor controlling the outcome. Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124; Deyoe v. Commissioner, 66 T.C. 904, 910 (1976). Generally, a sale of real property is complete upon the earlier of the transfer of legal title or the practical assumption of the benefits and burdens of ownership. Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124; Deyoe v. Commissioner, supra at 910. The parties agree that as of August 16, 1985, petitioner owned a depreciable *345 interest in the building. Petitioner, however, argues that she acquired a depreciable interest in the building prior to August 16, 1985. In order for petitioner to prevail on this argument, she must demonstrate that she acquired the benefits and assumed the burdens of ownership prior to August 16, 1985. Petitioner argues that she and the partnership reached an agreement on December 28, 1984. Petitioner contends that the agreement, which was signed on February 22, 1985, but which she dated December 28, 1984, transferred the benefits and burdens of ownership to her on December 28, 1984. The terms of the agreement do not support petitioner's argument. Under the agreement, the seller was entitled to all rents that accrued prior to closing. The seller was also responsible for all taxes, expenses, and repairs to the building prior to closing. The seller also bore the risk of loss from fire or other casualty occurring prior to closing. Finally, the seller was entitled to, and retained, possession of the building prior to closing. Petitioner has not established that she acquired the benefits and burdens associated with ownership of the building prior to the closing on August 16, *346 1985. Accordingly, we hold for respondent on this issue. [3]
The second issue for decision is whether petitioner properly deducted expenses and properly reported rental income related to the building for the period prior to August 16, 1985. Respondent determined that petitioner improperly reported rental income and expenses which accrued prior to August 16, 1985. Petitioner testified that she based the reported pre-August 16, 1985, amounts on Mr. Moretti's representation to her that the expenses incurred in connection with the building closely approximated the income generated by the building. Petitioner could *347 not identify the source of the amounts reported on her returns and presented no other evidence to substantiate her claim that she is entitled to deductions in excess of those allowed by respondent. We have already found that petitioner neither assumed the benefits and burdens of ownership, nor did she acquire legal title to the building prior to August 16, 1985. Petitioner has not met her burden of proof on this issue. Accordingly, we hold for respondent on this issue. The third issue for decision is whether petitioner is entitled to 1984 automobile and travel expense deductions allegedly incurred in connection with the purchase of the building. Petitioner offered no records or documentation regarding the claimed expenditures, and we have already found that petitioner did not acquire ownership of the building during 1984. We, therefore, hold for respondent on this issue. The fourth issue for decision is whether petitioner is entitled to the investment tax credit which she claimed with respect to the building on her 1984 Federal income tax return. Section 46(a)(3) allows a credit against taxes for qualified rehabilitation expenditures. Under certain conditions, this credit *348 may be passed on to the purchaser of property that qualifies for the credit. See sec. 1.48-12, Income Tax Regs.In order for an expenditure in connection with the rehabilitation of a certified historic structure to be a "qualified rehabilitation expenditure," the rehabilitation must be a "certified rehabilitation." Sec. 48(g)(2)(B)(iv). A "certified rehabilitation" is defined as "any rehabilitation of a certified historic structure which the Secretary of the Interior has certified to the Secretary [of the Treasury] as being consistent with the historic character of such property or the district in which such property is located." Sec. 48(g)(2)(C). Petitioner failed to prove that the Secretary of the Interior ever made such a certification with respect to the rehabilitation of the building, and the Department of the Interior has no record that the Secretary of the Interior has certified that the rehabilitation of the building was consistent with the historic character of the property or district within which it was located. An additional reason why petitioner may not claim the credit is contained in the regulations on which she relies. Section 1.48-12(c)(3)(ii), Income Tax Regs., *349 provides in part that where the rehabilitation expenditures are incurred by a person other than the taxpayer and the taxpayer subsequently acquires the building to which the expenditures are allocable, the taxpayer shall be treated as having incurred the rehabilitation expenditures actually incurred by the transferor provided that: (1) The building was not used after the rehabilitation expenditures were incurred and before the date of acquisition; and (2) no credit with respect to such qualified rehabilitation expenditures is claimed by anyone other than the taxpayer. We have found that petitioner acquired her interest in the building on August 16, 1985. The parties stipulate that as of April 11, 1985, 24,245 of a total 25,493 square feet in the building was being leased, and the record indicates that the expenditures upon which the claimed credit is based were expended by the prior owners of the building before April 11, 1985. We have also found that Mr. Harrison and Mr. Ashford claimed credits based on expenditures made in connection with the rehabilitation of the building on their Federal income tax returns. Thus, petitioner fails to satisfy either of the requirements for claiming *350 a credit for qualified rehabilitation expenditures incurred by another. Accordingly, we hold for respondent on this issue. Petitioner argues that in the event we find that she is not entitled to the credit for renovations to a historic structure, then we should find that she is entitled to the credit for renovations to a 40-year building. A 40-year building is defined as a qualified rehabilitated building (as defined in section 48(g)(1)) other than a certified historic structure. Sec. 46(b)(4)(C)(ii) (emphasis supplied). The building in this case is a certified historic structure. Therefore, the building cannot qualify as a 40-year building, and petitioner may not claim a credit for renovations to a 40-year building in this case. The final issue for decision is whether petitioner is liable for the additions to tax for negligence or intentional disregard of the rules and regulations under section 6653(a)(1) and (2). [4]Section 6653(a)(1) imposes a 5 percent addition to tax if any part of any underpayment of tax is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the *351 interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Rule 142(a). Negligence within the meaning of section 6653(a) has been defined as the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner argues that she acted reasonably under the circumstances and that the deficiency determination resulted from her mistaken belief that she purchased the building in 1984 and was entitled to the claimed deductions and credit. Petitioner, an accountant, did not present credible evidence to prove that she acted reasonably. We find that petitioner fails to satisfy her burden of proof and hold for respondent on this issue. Decision *352 will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent concedes his adjustment for "Capital Gain Income," in the amount of $ 54,283.00 for the taxable year 1985 as set forth in his notice of deficiency and concedes that petitioner realized no income from the transaction to which said adjustment relates. Respondent also concedes that petitioner is not liable for the additions to tax under section 6653(a)(1) and (2) for the taxable year 1983, and that petitioner is not liable for the additions to tax under section 6653(a)(2)↩ for the taxable years 1984 and 1985, relative to such portions of any tax deficiencies for 1984 and 1985, as may result from disallowance of claimed net operating loss carryovers.
3. We note that in his notice of deficiency, respondent redetermined petitioner's allowed depreciation deductions based on the determination that petitioner's basis in the building for purposes of depreciation was $ 1,667,741. The parties stipulate that the basis in the building was $ 1,672,084. Accordingly, the allowed depreciation deduction must be recomputed in order to properly reflect the stipulation.↩
4. See note 2, supra↩.