T.C. Memo. 2001-50

UNITED STATES TAX COURT

RICHARD A. GERSTENBERGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13430-98.                    Filed February 28, 2001.

Richard A. Gerstenberger, pro se.

<u>Stephen P. Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency in, and
an accuracy-related penalty under section 6662(a)[1] on, peti-
tioner's Federal income tax (tax) for 1995 in the amounts of

---

[1]All section references are to the Internal Revenue Code
(Code) in effect for the year at issue.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

$14,409 and $2,882, respectively.[2]

The issues for decision[3] are:

(1) Should the determinations for 1995 increasing peti-
tioner's income and disallowing certain claimed deductions that
respondent has not conceded be sustained?  We hold that they
should except to the extent provided herein.

(2) Is petitioner entitled for 1995 to a theft loss under
section 165?  We hold that he is not.

(3) Is petitioner liable for 1995 for the accuracy-related
penalty under section 6662(a)?  We hold that he is.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[4]

Petitioner resided in Alaska, and had a mailing address in
Montana, at the time the petition was filed.

---

[2]Although the notice of deficiency issued to petitioner for
1995 (notice) shows that respondent determined a deficiency in,
and an accuracy-related penalty under sec. 6662(a) on, peti-
tioner's tax of $14,409 and $2,882, respectively, computational
schedules that are attached to the notice show a deficiency of
$14,446 and an accuracy-related penalty of $2,889.20.  Because
respondent has admitted in the answer that the deficiency in, and
accuracy-related penalty on, petitioner's tax determined in the
notice are $14,409 and $2,882, respectively, we shall disregard
for purposes of this case the erroneous numbers shown in the
computational schedules that are attached to the notice.

[3]There are other issues relating to certain determinations
in the notice that are computational in that their resolution
flows automatically from our resolution of other determinations
in the notice that we address herein.

[4]Unless otherwise indicated, our Findings of Fact and Opin-
ion pertain to the year at issue.

Petitioner maintained a joint checking account, account No. 68-205239, with Jan Weber (Ms. Weber) at First Hawaiian Bank, from which Ms. Weber paid certain of petitioner's bills. From at least December 20, 1994, through around July 7, 1995, petitioner also maintained a joint savings account, account No. 67-243539, with Ms. Weber at First Hawaiian Bank.

Petitioner, who was a member of the International Union of Operating Engineers Local 3 and Local 302, worked for Wilder Construction Company (Wilder) in Alaska and for Goodfellow Bros., Inc. (Goodfellow), in Hawaii. Petitioner received $48,328.98 of wage income from Wilder, from which Wilder withheld $119.50 of Alaska State income tax. Petitioner received $10,862.56 of wage income from Goodfellow, from which Goodfellow withheld $981.58 of Hawaii State income tax. In addition to his wage income, petitioner had $165 of taxable interest income.

Petitioner, who held a dive-master rating from the Professional Association of Dive Instructors (PADI), wanted to become qualified to receive a dive-instructor rating from PADI. A person who held a dive-master rating was qualified to assist a dive instructor in teaching an individual how to dive. In no event could a dive master certify an individual as qualified to dive. Only a person who held a dive-instructor rating from PADI was qualified to certify an individual as qualified to dive.

In order to become qualified as a PADI dive instructor,

petitioner was required, inter alia, to work a certain amount of time as a dive master assisting a dive instructor in teaching individuals how to dive, which he did. While living in Hawaii, petitioner spent $2,685.01 on various expenditures relating to his diving activity. Sometime in December 1995, petitioner received a dive-instructor rating from PADI.

In addition to the expenditures with respect to his diving activity that petitioner made while living in Hawaii, petitioner made the expenditures listed below when he was in Hawaii, Alaska, Montana, Idaho, Washington, and/or perhaps other States and/or in Canada:

| Nature of Expenditure | Amount of Expenditure |
|---|---|
| Long distance calls | $684.38 |
| Gasoline[1] | 2,254.15 |
| Clothes | 603.77 |
| Airfare | 547.00 |
| Parts | 1,310.00 |
| Union dues | 1,105.50 |
| Tools | 1,787.04 |
| Parts for recreational vehicle | 119.95 |
| Truck repair and maintenance | 4,084.47 |

[1]This category does not include amounts spent for gasoline by petitioner in Hawaii. That is because petitioner does not claim as deductions any gasoline expenditures that he made while he was living in Hawaii.

On December 21, 1993, in response to a letter written by petitioner to the police department in Fairbanks, Alaska, in which he alleged that certain of his tools with a value of $40,000 were stolen from him sometime in 1991 (1991 purported theft), police officer Coffey (Officer Coffey), a member of that

police department, was assigned to investigate that purported theft.  Officer Coffey prepared a report with respect to the 1991 purported theft (police report) largely on the basis of information provided by petitioner and/or Ms. Weber.  The police report included certain attachments that petitioner and/or Ms. Weber prepared, which described the items that were allegedly stolen from petitioner as a result of the 1991 purported theft and assigned a monetary value to each of those items.  In the course of investigating the 1991 purported theft, Officer Coffey contacted two other individuals in addition to petitioner and Ms. Weber.  With respect to the statements that Officer Coffey took from those two individuals, Officer Coffey stated in the police report:

> Ofc Coffey contacted a business associate of * * * [petitioner], Welch who stated that the tools were loaded up onto a truck and moved to Montana by * * * [petitioner's] girlfriend as far as he knew.  Welch stated that he didn't know who took the tools or he didn't have anything to do with it. * * * Ofc Coffey called and contacted Melchert who stated that he was only briefly aware of the theft and was not sure what Ofc Coffey wanted.  Melchert could only say that * * * [petitioner] had a lot of tools and Melchert stated that he thinks that $40,000.00 is a bit inflated. * * *

Officer Coffey recommended in the police report that the case "be closed due to the time laps [sic] and no leads to follow up on."

Form 1040, U.S. Individual Income Tax Return (Form 1040), for 1995 (1995 return) was filed with respondent in petitioner's name and signed in petitioner's name.  The 1995 return showed

petitioner's occupation as mechanic and Michael J. Brady of the "MICHAEL J. BRADY ACCTY CORP" as the paid preparer of that return.

The 1995 return reported the following items and amounts of income or loss on page 1 on the lines indicated:

| Item of Income or Loss | Line on Page 1 of 1995 Return | Amount |
|---|---|---|
| Wages, salaries, tips, etc. | 7 | $59,192 |
| Taxable interest income | 8a | 165 |
| Business income or (loss) | 12 | (40,439) |
| Unemployment compensation | 19 | 2,501 |
| Net operating loss (NOL) carry-over to 1995 | 21 | (20,550) |

The 1995 return reported on page 1, on lines 22 and 31, respectively, "total income" and "adjusted gross income" of $869.

The 1995 return included Schedule A, Itemized Deductions (Schedule A), lines 20 through 26 of which were entitled "Job Expenses and Most Other Miscellaneous Deductions" (job-expense section). The 1995 return claimed on line 20 of Schedule A, entitled "Unreimbursed employee expenses", (1) $1,936 for "UNION AND PROFESSIONAL DUES" and (2) $11,580 "FROM FORM 2106". Form 2106, Employee Business Expenses (Form 2106), attached to the 1995 return listed the following claimed expenses on the lines indicated:

| Line on Form 2106 | Nature of Claimed Expense | Amount of Claimed Expense |
| --- | --- | --- |
| 1 | Vehicle expense | - |
| 2 | Parking fees, tolls, and trans-portation | - |
| 3 | Travel expense while away from home overnight | $1,900 |
| 4 | Business expenses not included on lines 1 through 3 | 8,722[1] |
| 5 | Meals and entertainment expenses | 1,916[2] |

[1]According to a separate statement attached to the 1995 return, the $8,722 listed in Form 2106 consisted of $6,411 for supplies and $2,311 for uniforms.

[2]Although Form 2106 claimed $1,916 for meals and entertainment, as required by Form 2106, only 50 percent of those expenses (i.e., $958) was claimed on line 20 of Schedule A as part of unreimbursed employee expenses.

The 1995 return claimed on line 21 of Schedule A $318 for "Tax preparation fees" and did not claim any amount on line 22 of that schedule, entitled "Other expenses".

As required by the job-expense section of the 1995 return and section 67(a) (2-percent adjustment), the total expenditures claimed in that section, i.e., $13,834, were reduced by an amount equal to 2 percent of the $869 of adjusted gross income reported in the 1995 return, i.e., by $17. The 1995 return claimed the balance, i.e., $13,817, on line 26 of Schedule A as a deduction.

The 1995 return also included Schedule C, Profit or Loss From Business (Schedule C), which claimed that petitioner was the proprietor of a business that provided truck repair services. Schedule C reported gross income of $2,500 and claimed "Total expenses before expenses for business use of home" of $42,939

(claimed Schedule C expenses) and a net loss of $40,439.

In the notice, respondent determined that petitioner received $2,932 as a refund of State income tax that he had deducted in a prior year and increased petitioner's income by that amount. In addition, respondent disallowed in the notice the following claimed in the 1995 return: (1) The entire amount ($20,550) of the NOL carryforward claimed as a deduction on page 1, line 21, of that return; (2) the entire amount ($42,939) of the deduction claimed for alleged Schedule C expenses; and (3) $9,934 of the total expenses ($13,834) claimed, before the 2-percent adjustment, in the job-expense section of Schedule A. Respondent also determined in the notice that petitioner is liable for the accuracy-related penalty under section 6662(a).

                              OPINION

Petitioner has the burden of showing error in respondent's determinations in the notice and his entitlement to any new matter that he claimed at trial. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner attempted to satisfy his burden of proof in this case through his own testimony and certain documentary evidence.[5] Based on our observation of petitioner at trial, including his demeanor, we did not find petitioner to be credible. In addi-

---

[5]Although we provided petitioner an opportunity to file a brief in this case, petitioner declined to do so.

tion, we found petitioner's testimony to be evasive, uncorroborated, vague, and/or conclusory in certain material respects. Under these circumstances, we are not required to, and we shall not, rely on petitioner's testimony to sustain his burden of proof in this case. See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

As for the documentary evidence on which petitioner relies, that evidence establishes that petitioner paid certain amounts for various expenditures. However, except as discussed below, that documentary evidence does not show that any of those paid amounts is deductible.

We address initially petitioner's contention at trial that he did not file the 1995 return. The only evidence proffered by petitioner to support that contention is his own self-serving testimony, on which we are unwilling to rely. Section 6064 provides that "The fact that an individual's name is signed to a return * * * shall be prima facie evidence for all purposes that the return * * * was actually signed by him." We have found that the 1995 return was signed in petitioner's name. On the record before us, we find that petitioner has failed to overcome the

statutory presumption that he signed the 1995 return.[6]

We turn next to petitioner's contention that respondent erred in determining to include in petitioner's income a State income tax refund of $2,932 that he had deducted in a prior year. The record contains no evidence to support that contention other than petitioner's self-serving testimony, on which we are unwilling to rely. On the record before us, we find that petitioner has failed to satisfy his burden to show error in respondent's determination to include in his income a $2,932 State tax refund. Accordingly, we sustain that determination.

We turn now to petitioner's contentions that respondent erred in determining to disallow (a) the deduction claimed for an alleged NOL carryforward (NOL deduction), (b) the deductions claimed for alleged Schedule C expenses, and (c) $9,934 of the total expenses ($13,834) claimed, before the 2-percent adjustment, in the job-expense section of Schedule A. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed.

---

[6]In any event, petitioner conceded at trial that he received $48,328.98 and $10,862.56 of wage income from Wilder and Goodfellow, respectively, and that he earned $165 of taxable interest income, all of which income was reported in the 1995 return. With respect to the $2,501 that was reported in the 1995 return as unemployment compensation, at trial petitioner did not concede or deny that he received such compensation. He testified that he did not know anything about such compensation, including whether or not he received it. On the instant record, we find that petitioner has failed to show that he did not receive the unemployment compensation reported in the 1995 return.

See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

With respect to petitioner's contention that respondent erred in disallowing the NOL deduction, section 172 allows a deduction for an NOL for the taxable year in an amount equal to the NOL carried back to the taxable year and the NOL carried forward to the taxable year. See sec. 172(a). An NOL is defined as the excess of deductions over gross income for a particular taxable year, with certain modifications. See sec. 172(c) and (d). Petitioner, as the claimant of an NOL deduction, must prove his right thereto. See United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955).

It is petitioner's position that he had an NOL for 1993 that he is entitled to carry forward to the year at issue. According to petitioner, the NOL that he claims for 1993 was produced by an alleged loss from the 1991 purported theft, which he did not discover until sometime during 1993 (1993 claimed theft loss). Respondent argues that petitioner has failed to substantiate the 1993 claimed theft loss and, consequently, has failed to prove his entitlement to the NOL deduction.

Section 165 allows a taxpayer to deduct any loss from theft in the year during which the taxpayer discovers such loss. See sec. 165(a), (e). Petitioner bears the burden of proving that a theft has occurred and that the requirements of section 165 have been met. See Rule 142(a); Allen v. Commissioner, 16 T.C. 163,

166-167 (1951). In order to carry his burden, petitioner must establish both the existence of a theft within the meaning of section 165 and the amount of the loss. See Elliott v. Commissioner, 40 T.C. 304, 311 (1963).

In order to satisfy his burden to substantiate the 1993 claimed theft loss, petitioner relies on his self-serving testimony, on which we are unwilling to rely, and on a police report that was prepared by Officer Coffey, who was assigned to investigate the 1991 purported theft. Officer Coffey prepared that report largely on the basis of information provided by petitioner and/or Ms. Weber. Attachments to the police report that were prepared by petitioner and/or Ms. Weber listed the items that were purportedly stolen from petitioner and assigned a monetary value to each of those items. Officer Coffey recommended that the case "be closed due to the time laps [sic] and no leads to follow up on." We find that the police report and the attachments thereto constitute for the most part nothing more than a mere recitation of the factual allegations of petitioner and/or Ms. Weber, who was not a witness at the trial in this case, with respect to the 1991 purported theft. We are unwilling to rely on the police report and the attachments thereto as establishing either that the 1991 purported theft occurred or that petitioner had any loss for 1993 under section 165 from that purported theft, let alone a loss therefrom in the amount claimed by

petitioner.

Based on our examination of the entire record before us, we find that petitioner has failed to establish his entitlement to the 1993 claimed theft loss or to any other loss for 1993 that resulted in an NOL for that year which he is entitled to carry forward to the year at issue.[7]  Accordingly, we sustain respondent's determination to disallow the claimed NOL deduction.

With respect to petitioner's contention that respondent erred in determining to disallow the claimed Schedule C-expense deductions, as pertinent here, section 162(a) allows a deduction for ordinary and necessary expenses paid during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  In general, an expense is

---

[7]Assuming arguendo that petitioner had proved that he had an NOL for 1993, we nonetheless find that petitioner failed to satisfy his burden to show that he was entitled to an NOL deduction for the year at issue.  In general, a taxpayer who sustains an NOL must first carry such loss back 3 years and, if unabsorbed, then forward 15 years.  See sec. 172(b)(1)(A), (2).  The taxpayer may elect to relinquish the entire carryback period and simply carry the loss forward for 15 years.  See sec. 172(b)(3).  Any such election must be made by the due date, including extensions of time, for filing the taxpayer's return for the taxable year of the NOL.  See sec. 172(b)(3).  On the record before us, assuming arguendo that petitioner had established that he had an NOL for 1993, we find that petitioner has failed to show that he timely made the election described in sec. 172(b)(3) and, if he did not, that the claimed loss was not absorbed for the 3 years prior to 1993.

ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose.  See Deputy v. du Pont, 308 U.S. 488, 495-496 (1940).  Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business.  See Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985).

On the record before us, we find that petitioner has failed to establish (1) that he incurred and paid all of the claimed Schedule C expenses, (2) that he was engaged in any trade or business, other than that of being an employee of Wilder and of Goodfellow, and (3) that any of the claimed Schedule C expenses are ordinary and necessary to any trade or business in which petitioner claims to have engaged.

With respect to the depreciation claimed in Schedule C, on the record before us, we find that petitioner has failed to prove that any of the properties with respect to which such depreciation was claimed was used in a trade or business of petitioner or held by him for the production of income.[8]  See sec. 167(a).

Based on our examination of the entire record before us, we find that petitioner has failed to show that he is entitled to

---

[8]Assuming arguendo that petitioner had established that properties on which depreciation was claimed in Schedule C were used in a trade or business or held for the production of income, we find on the instant record that petitioner has failed to prove his respective bases in any such properties.  See sec. 167(c).

deduct the claimed Schedule C expenses. On that record, we sustain respondent's determination to disallow the Schedule C deductions claimed in the 1995 return.

We shall now consider whether petitioner is entitled to deduct any of the claimed Schedule C expenses as itemized deductions subject to the 2-percent adjustment required by section 67(a). If a taxpayer's trade or business is that of being an employee, the ordinary and necessary expenses of being an employee will be treated as itemized deductions, see sec. 62(a)(1), subject to the limitation of section 67(a), i.e., the 2-percent adjustment. See Alexander v. IRS, 72 F.3d 938, 944-946 (1st Cir. 1995), affg. Alexander v. Commissioner, T.C. Memo. 1995-51. Respondent concedes that, of the total Schedule C expenses claimed by petitioner, expenses aggregating $2,577 qualify as employee business expenses that constitute miscellaneous itemized deductions subject to the 2-percent adjustment. Based on our examination of the entire record before us, we find that petitioner has failed to prove that any additional amount of the claimed Schedule C expenses qualifies as such an itemized deduction.

With respect to petitioner's contention that respondent erred in determining to disallow certain of the expenditures that he claimed in the job-expense section of Schedule A, respondent concedes that petitioner is entitled to $953 of those disallowed

expenditures as union dues. Based on our examination of the entire record before us, we find that petitioner is entitled to an additional $152.50 of those disallowed expenditures as union dues. Except for the union dues which respondent conceded and the additional union dues which we found petitioner paid, totaling $1,105.50, we find on the instant record that petitioner has failed to establish that he is entitled to any additional expenditures that were claimed in the job-expense section of Schedule A and that respondent determined to disallow. Accordingly, except to that extent, we sustain that determination.

We next address the new matter raised by petitioner at trial that he is entitled to a deduction for a theft loss because Ms. Weber embezzled certain of his funds. In support of that deduction, petitioner testified that approximately 1 week prior to the trial in this case he discovered that Ms. Weber had embezzled an undisclosed amount of money from him during the year at issue (1995 purported embezzlement). We are unwilling to rely on that testimony. On the record before us, we find that petitioner has failed to establish that Ms. Weber embezzled any money from him during the year at issue.[9] See Elliott v. Commissioner, 40 T.C.

---

[9]Assuming arguendo that petitioner had established that Ms. Weber embezzled a certain amount of money from him during 1995, on the record before us, we find that he has failed to establish that he is entitled to a theft-loss deduction under sec. 165 for 1995 with respect to that embezzlement. That is because a theft loss is treated as sustained in the year during which the tax-
(continued...)

at 311. Based on our examination of the entire record before us, we find that petitioner has failed to establish that he is entitled to a theft-loss deduction under section 165.

We turn finally to respondent's determination that petitioner is liable for the accuracy-related penalty under section 6662(a). Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from, inter alia, negligence or disregard of rules or regulations, see sec. 6662(b)(1), or a substantial understatement of income tax, see sec. 6662(b)(2). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard. See sec. 6662(c). Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, see sec. 6662(d)(2)(A), and is substantial in the

---

[9](...continued)
payer discovers the loss, and petitioner claims that he discovered the 1995 purported embezzlement in the year 2000. See sec. 165(a), (e).

case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, see sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. See sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Although petitioner asserted at trial that he should not be held liable for the accuracy-related penalty under section 6662(a), he presented no evidence regarding that penalty. On the record before us, we find that petitioner has failed to show that he is not liable for the accuracy-related penalty under section 6662(a).

We have considered all of the contentions and arguments of petitioner that he advanced at trial, which are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of respondent,

Decision will be entered under Rule 155.